UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA (LB) |
| Plaintiff, | REPORT AND RECOMMENDATION FOR DISCOVERY ORDER |
| v. | |
| IVAN CERNA, *et al.* | |
| Defendants. | |

## I. INTRODUCTION

On March 2, 2010, following a CJA funding request for translation and transcription services, the district court referred all parties to this Court for a recommendation as to how to solve discovery problems concerning the Spanish-language audio recordings that are a significant part of the evidence in this case.[1] Docket # 1444. This Court addressed case management issues with all parties on March 19, 2010, and April 1, 2010, made specific recommendations to the parties, and directed the parties to meet and confer further. S*ee* docket # # 1603 and 1641 (setting forth parties' discussions). Meanwhile, on March 18, 2010, the district court advanced a previously-imposed deadline, *see* case management order at docket # 998, and ordered the government to produce by April 19, 2009, at noon, an index that included all audio recordings and participants (if known). *See*

---

[1] That referral also referenced a CJA funding request. Based on a defense request and the parties' agreement, any issues regarding that request remain confidential and *ex parte*. The defense agreed that issues regarding discovery are appropriately addressed publicly. Docket # 1470 at 2.

REPORT AND RECOMMENDATION (CR 08-0739 WHA (LB))

docket # 1584. For the reasons stated below, this Court now recommends that the district court order the government to produce an index with entries in 100% of the participant fields by **Monday, June 7, 2010, at noon.** The Court also recommends that the district court direct the government to consider supplementing the index with the additional information set forth in section II, D. If the government agrees, the Court recommends that the district court allow the government to notify the district court and obtain an extension of time to prepare the full index until **Friday, June 11, 2010, at 5 p.m.** or such other time as the district court deems appropriate.

## II. ANALYSIS

A. <u>The Recordings and The Index Produced To Date</u>

  The government has produced to the defendants over 3,200 Spanish-language audio recordings under Federal Rule of Criminal Procedure 16. *See, e.g.,* docket # 1584 at 1, 3. Following a defense motion, *see* docket # 1359, and based on incomplete indexes that did not identify all of the recordings, dates, or participants, on March 18, 2010, the district court ordered the government to (a) produce an index of all of the recordings by noon on April 19, 2010, and (b) include in the index the date of each conversation, the participants (if known), and a cross-reference (presumably by a bates or other naming convention) to the corresponding recording so that the recordings are findable. Docket # 1584 at 2; *see* docket # 998 (similar deadline for non-Rico defendants).

  As part of its evaluation of the CJA referral, this Court solicited input from the defense regarding the indexes that the government produced on April 19, 2010, and received the following response. The government produced 14 indexes on April 19, 2010, and, except for one index for 272 recordings, the indexes generally do not include information about the participants in the recordings. More specifically, (a) all 272 recordings in the DH index have entries in the "participant" field, (b) only approximately 5% of the 832 DH jail calls have "participant" entries, (c) approximately 8.6% of the 1,959 non-DH recordings have "participant" entries, and (d) approximately 5% (based on a preliminary analysis) of 20 new CDs disclosed on April 19 have "participant" entries. As to these same categories (a) through (d), the following is a summary of the transcripts produced: (a) 240 transcripts of 272 recordings, (b) 3 transcripts of 832 recordings, (c) 47 transcripts of 1,959 recordings, and (d) very few transcripts of the remaining 20 new CDs produced

REPORT AND RECOMMENDATION (CR 08-0739 WHA (LB))

2

on April 19.

B. The Government Knows Participants On The Recordings and The Defense Does Not

From a review of the filings in the district court record, the Rule 16 recordings apparently are either audio recordings of specific defendants, *see* Fed. R. Crim. P. 16(a)(1)(B)(i), or other recordings produced under Rule 16(a)(1)(E), all in the form of consensually-monitored phone calls, video recordings, body wires, or jail calls. If this is true, then the government necessarily has "participant" information within its possession, custody, and control, *see* Fed. R. Crim. P. 16(a), while the defense – based on a data dump of over 3,000 unidentified Spanish-language recordings without English language transcripts or participant data – does not. More specifically, the four categories of recordings are as follows:

    a. ***Consensual Phone Calls***. An informant/cooperating witness presumably placed these calls to known persons (including defendants, presumably).

    b. ***Video Recordings***. Any audio was captured from an informant/cooperating witness wearing a wire that resulted in a recording of known persons (including defendants, presumably).

    c. ***Body Wires (272 in the DH series and the rest possibly from the FBI case)***. Again, any audio resulted from a wire worn by a cooperating government witness that resulted in a recording of known persons (including defendants, presumably).

    d. ***Recorded Jail Calls***. The government obtained these by specific requests to jails for calls attributable to a particular person, meaning, one or more defendants or jailed informants.

For the first three categories, at minimum, the government should know the cooperating witness/informant (even if that informant is identified only by number now), and it should know – from monitoring or debriefing of the informant – the identity of other participants. As to the jail calls in category four, the government should have jail calls attributable to particular defendants or informants. More specifically, to obtain jail calls, the government requests them by inmate name, and the jail produces a CD with the inmate's calls. In short, the government must know the participants.

The Court observes that the district court's prior order – to disclose participants *if known* – did not mean "disclose participants if the prosecutors or case agent know who they are." A prosecutor is "deemed to have knowledge of and access to anything in the possession, custody, or control of any federal agency participating in the same investigation of the defendant." *United*

REPORT AND RECOMMENDATION (CR 08-0739 WHA (LB))
3

1 *States v. Gonzales-Rincon*, 36 F.3d 859, 865 (9th Cir. 1994) (internal quotation omitted); *see also*
2 Deputy Attorney General David W. Ogden's Memorandum For Department Prosecutors, "Guidance
3 for Prosecutors Regarding Criminal Discovery" (hereafter, "Ogden Memo"), at 10 (Jan. 4, 2010)
4 ("[p]rosecutors must comply with [] local rules [regarding discovery], applicable case law, and any
5 final court order regarding discovery").

C. <u>The Clerical Nature Of Producing An Index With Participant Fields</u>

Based on CJA submissions, 100% of the 272 DH recordings have "participant" fields, and the government has transcribed 240 of the 272 recordings. The remaining audio recordings apparently are on indexes that generally do not identify participants. The recordings include the following: (a) consensual phone calls, (b) video recordings, (c) body wires, and (d) jail calls.

First, identifying known participants on the jail calls requires looking at the original subpoenas or requests to the jail (which must have included inmates' names) and cross-referencing the responses from the jail to the index. It is a simple, clerical task that requires looking at the government's own documents. Moreover, ordinarily, law enforcement agents document their law enforcement activities in their investigative files, either in reports, indexes, evidence logs, or other documents, and they presumably logged the jail calls as they received them (or prosecutors did).

Second, the body wires, consensual calls, and videos apparently involve informants/cooperating witnesses wearing wires or making monitored calls. Agents brief informants first, debrief them after, and document those encounters in reports. Moreover, agents monitor conversations and document their law enforcement activities in their investigative files, either in reports, chronological files, or other internal documents. Indexing here does not require disclosure of confidential internal documents; it merely requires accessing information already in the government's files or within the government's knowledge.

Put another way, to comply with the district court's prior order to provide participant names for all recordings, the government need only access information it already has, either in its own files or through its cooperating witnesses.

As discussed above, however, the government's index provided participant names only for the DH body wires and not for the other recordings. That must mean that the investigative agency

REPORT AND RECOMMENDATION (CR 08-0739 WHA (LB))
4

(Immigration and Customs Enforcement (ICE)) has not created the robust index that one expects in a complex and significant case with voluminous discovery because if it had, the government presumably would have complied with the district court's March 18 order to provide participant information.[2]  *See* district court 3/18/10 order at docket # 1584; district court 4/12/10 order at docket # 1636 (referencing the "haystack" of discovery in the case).  By contrast, agencies ordinarily maintain databases in electronic format with the date and time of the recording (either wire or consensual calls or intercepts), the telephone numbers (if known) for any calls, the names of the individuals associated with the recordings (either calls, conversations, or intercepts), and (particularly in wiretaps) a short summary of the conversation.  To the extent possible, in discovery, the electronic files are produced to the defense in a format (such as .txt, .wpd, or .doc) that allows for basic searches using software commonly available on most computers.  For example, in wiretap cases, DEA and ICE commonly maintain one electronic file for each intercepted telephone, that file contains summaries of each call, and each call is numbered.  The entire file is searchable by key words, such as name, call number, phone number, and so forth.  Indeed, it is the Court's experience that in complex cases involving a large amount of electronic discovery, the government creates an electronic database using Concordance and provides the database to the defense with the "load" files that allow the Concordance database program to link .tif and .txt files with each other and other associated data fields (e.g. date, author, title of document, and so forth).  *See, e.g.,* Electronic Discovery Working Group's Best Practices for Electronic Discovery of Documentary Materials (W.D. Wash. Sept. 2005) (setting forth this process).

Another observation is that the district court's prior orders suggest that only recently did the government produce all of the audio recordings (including all body wires and consensual monitoring), and only as of April 19 was there a complete index listing all recordings.  *See, e.g.,*

---

[2] The conclusions in this paragraph are based on district court practice in complex cases, whether wiretap or otherwise.  In addition, the following discovery protocols collectively support each point in this paragraph:  Protocol Regarding Discovery in Complex Cases (N.D. Cal. Mar. 12, 2004); Suggested Practices Regarding Discovery in Complex Cases (N.D. Cal. March 12, 2004); Electronic Discovery Working Group's Best Practices for Electronic Discovery of Materials Pertaining to Wiretaps (W.D. Wash. Sept. 2005); Electronic Discovery Working Group's Best Practices for Electronic Discovery of Documentary Materials (W.D. Wash. Sept. 2005).

REPORT AND RECOMMENDATION (CR 08-0739 WHA (LB))
5

1  district court 3/18/10 order at docket # 1584. That is basic discovery that ordinarily is produced
2  upon indictment. *See* Protocol Regarding Discovery in Complex Cases at ¶¶ 1, 3 (N.D. Cal. Mar.
3  12, 2004). (Parenthetically, obtaining jail calls on a rolling basis – if that is what happened here – is
4  more typical.) Given the district court's repeated observations that the government misses filing and
5  disclosure deadlines and that the case is understaffed, *see, e.g.,* docket # # 1674 and 1603 at 8, there
6  is some concern that the lack of government resources has resulted in poor case management that
7  threatens the orderly progression of the case. That concern is heightened by the government's
8  apparent unwillingness – despite this Court's case management efforts – to collaborate with the
9  defense to produce a joint index or pool resources for objective indexing that presumably would
10 result in savings to both parties. *See* 3/25/10 order at # 1603 (summarizing efforts and suggestions);
11 Defendants' 4/14/10 Status Memo at docket # 1641 (summarizing lack of collaboration); Suggested
12 Practices Regarding Discovery in Complex Cases (encouraging collaboration).

13 In a case this complex and close to trial, it is surprising that the government has not done
14 more to access its own data. Indeed, given that the government apparently has transcribed and
15 identified only the DH body wires,[3] it seems possible that prosecutors do not know what is on the
16 remaining recordings.

17 Nonetheless, even without an index, it is a modest use of clerical resources for the
18 government to access its own documents and complete the index as the district court ordered
19 previously. Even assuming the unlikely worst – that the government intercepted hours of
20 conversations through body wires and consensual calls without documenting anything – the
21 government's own informants (and handling agents) were party to those recordings. The
22 government has resources and can accomplish the review during the time that the Court proposes.

23 D. Further Suggestions For The Orderly Management of The Case

24 Because the government has no complete index and must review its documents in order to
25 complete the index that the district court ordered previously, the Court also suggests that the district
26 court direct the government to consider supplementing the index with additional fields identified in

27
28 [3] The DH body wires are reflected on an index that contains participant names, and most of them have been transcribed.

REPORT AND RECOMMENDATION (CR 08-0739 WHA (LB))
6

Defendants' 4/14/10 status memo, docket # 1641 at 2, including the type of call (body wire, consensual call, jail, or video), the discovery production date, the bates or identification range, the participants, the date and time, the monitoring agent, the informant making the recording, and a cross-reference to any transcript. The government will be reviewing this information anyway, it is clerical in nature, it is the type of data base ordinarily produced in these cases (as discussed above and as set forth in the discovery protocols), and it will help the prosecution possibly more than it will help the defense. To that end, the government also should consider including – to the extent that the material is referenced in the documents or materials being reviewed – a summary of the recording akin to that found in the ordinary monitoring logs/line sheets disclosed as a matter of course in the ordinary wiretap case.

In deciding whether to provide a full index, the district court should direct the government to consider the following. To the extent that the recordings are of a particular defendant, providing participant data is necessary for the government to comply with its discovery obligations under Rule 16(a)(1)(B)(i) to produce a defendant's own statements. Else a defendant – faced with a data dump of over 3,200 recordings with no meaningful way of accessing them – has no idea which recordings are his. Here, too, the recordings are difficult to hear and transcribe. If an agent monitored the recording or debriefed the informant and thereafter wrote a report or chronological entry summarizing the participants and conversation, that report may be the only meaningful access that a defendant has to his own Rule 16(a)(1)(B)(i) statement. Indeed, if the recording is inaudible, the monitoring agent's reports may be the only Rule 16 statements.

Beyond identifying Rule 16(a)(1)(B)(i) statements, this review might provide access to Rule 16(a)(1)(E) material and any potential *Brady* material not currently available – absent transcripts – to the defense. Finally, the Court reminds the government that

> Prosecutors are also encouraged to provide discovery broader and more comprehensive than the discovery obligations. . . . Providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases. It also provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error. . . . Compliance with discovery obligations facilitate[s] a fair and just result in every case, which is the Department's singular goal in pursuing a criminal prosecution. . . . By evaluating discovery obligations . . . and taking advantage of available resources, prosecutors are more likely to meet their discovery obligations in every case and in so doing achieve a just and final result in every criminal prosecution.

REPORT AND RECOMMENDATION (CR 08-0739 WHA (LB))
7

Ogden Memo at 9-11.

To the extent that the government determines that it will provide a complete index like that outlined here, this Court recommends that the district court allow the government to notify the district court and obtain an extension of time to prepare the full index until **Friday, June 11, 2010, at 5 p.m.** or such other time that the district court deems appropriate.

### III. OBJECTIONS

Any party may serve and file specific written objections within fourteen days after being served with a copy of this order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59. Failure to file objections within the specified time may waive a party's right to review. *See* Fed. R. Crim. P. 59(b).

**IT IS SO RECOMMENDED.**

Dated: May 24, 2010 _____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California

REPORT AND RECOMMENDATION (CR 08-0739 WHA (LB))

8