JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
CHRISTINE Y. WONG (NYBN 3988607)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6758/7301
   Facsimile: (415) 436-6753
   E-Mail: wilson.leung@usdoj.gov

THERYN G. GIBBONS (NYBN 46128676)
Trial Attorney, United States Department of Justice

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. S3-08-CR-0730-WHA |
| v. | GOVERNMENT'S OBJECTIONS TO REPORT AND RECOMMENDATION FOR DISCOVERY ORDER |
| IVAN CERNA, et al., | |
| Defendants. | |

**I.   INTRODUCTION**

On May 24, 2010, Magistrate Judge Beeler issued a Report and Recommendation For Discovery Order (the "R&R") regarding the Government's production on April 19, 2010, of indices of all audio recordings, including participant information, if known. The R&R found that the Government failed to provide indices of audio recordings as previously required by the Court, and ordered the Government to do so. For the following reasons, the Government respectfully objects to the R&R and requests that the Court decline to adopt it, as well as to vacate the orders

that the Court has already issued based on the R&R, and to continue to enforce the Court's existing orders with the schedules set forth therein.

## II. FACTUAL BACKGROUND

### A. The Court's March 18, 2010, Order

On March 18, 2010, the Court ordered that the Government provide by April 19, 2010, "an index encompassing all recordings turned over in discovery." See Docket No. 1584. The index should include "the date of the conversation and, *to the extent known*, all participants in those conversations." (Emphasis added.) Further, the "index should be traceable to the corresponding recordings so that the recordings are findable." The Court also noted that there were transcripts for which no corresponding audio recordings were identified. In the March 18, 2010 Order, the Court did not issue a specific ruling with regard to those transcripts.

### B. The Government's April 19, 2010, Indices

As described more specifically below, on April 19, 2010, the Government provided an index of all recordings it had produced in discovery. There were fourteen indices in all.

#### *i. The DH Index*

The principal index lists 532 line items and covers all consensual recordings — i.e., all (a) consensual telephone calls, (b) video recordings, and (c) body wires — made during the underlying ICE investigation of this matter. See DH Index (attached as Exhibit B to Declaration of W.S. Wilson Leung, the "Leung Declaration"). In addition to the consensual recordings, the DH Index also listed certain jail calls that had been assigned DH numbers and cross-referenced them to specific entries in the other jail indices that were produced. See, e.g., Exhibit B, DH 190 and DH 197 (Jonathan Cruz-Ramirez Jail calls).

As the accompanying cover letter explained (attached as Exhibit A to the Leung Declaration), and as a cursory review of the DH Index will reveal, the DH Index contained the following fields: 1. Discovery Date; 2. Disk Number; 3. Disk File Folder Name; 4. File Name; 5. DH Number; 6. Date of Recording; 7. Participants (if known); and 8. Bates Number of Corresponding Transcripts (if available). As the cover letter further explained, the first four categories were provided for ease of reference so that defense counsel could locate each specific

recording. To pre-empt the question of why there are gaps in the DH numbers, the Government explained in the cover letter that not all DH numbers were used. For example, certain DH numbers were assigned to duplicate recordings, other numbers were simply not used, or certain numbers were assigned to materials that do not constitute recordings (e.g., photographs). The DH Index, however, accounted for every DH number that was assigned to a recording.

                *ii.*     *The "All Other" Index*

In addition to the DH Index, the Government also provided a separate index of consensual recordings that it found that were made *not* by ICE during the course of this investigation, but, rather, by the FBI during an independent investigation. This additional index (attached as Exhibit C to the Leung Declaration and given the computer file name "All Other Index") lists 102 line items and contained the following fields: 1. Date of production; 2. Disk; 3. File Name; 4. Date of Recording; 5. Participants; and 6. Corresponding Draft Transcript/Summary (if available). Again, the first three categories were provided for ease of reference so that defense counsel could locate each specific recording. Most of the participants in these consensual recordings made by the FBI are not defendants in this case. See Exhibit C.

                *iii.*    *The Jail Call Indices*

The DH Index and the All Other Index described above address all consensual recordings produced to the defense, i.e., consensual telephone calls, video recordings, and body wires. Participant information, to the extent known, has been completed for these recordings.

In addition to the DH Index and the All Other Index, the Government also produced eleven separate indices of jail calls that it received on an on-going basis from various local jails, i.e., Glenn Dyer Jail in Alameda County (where most of the defendants are housed), Santa Rita Jail in Alameda County, San Francisco County Jail, Marin County Jail, and Kern County Jail (Lerdo Facility). These indices bear the following descriptive computer file names (so that their subject matter could be readily ascertained) and are attached to the Leung Declaration as exhibits as indicated below:

//

1. 3-11-09 Discovery.xls (Leung Exhibit D);

2. 4-17-2009 disc disk 1-17.xls (Leung Exhibit E);

3. 4-30-09 disc 2 and 8.xls (Leung Exhibit F);

4. 4-30-09 Discovery-X1-X5-Disk x5-dh160.xls (Leung Exhibit G);

5. 7-7-09 disc disk #1.xls (Leung Exhibit H);

6. Oakland jail calls April to May 2009.xls (Leung Exhibit I);

7. calls related to March 4 car stop.xls (Leung Exhibit J);

8. additional March 4 calls.xls (Leung Exhibit K);

9. Master CD List – Marin (COPY).xls (Leung Exhibit L);

10. Marin 1218 jail calls.xls (Leung Exhibit M);

11. SF-04082010 MASTER COPY 3 - JAIL CALLS INDEX.xls (Leung Exhibit N).

The Government also produced a twelfth index of calls relating to non-defendant MS-13 member Darwin Flores, who was incarcerated at Soledad State Prison. The index for these Darwin Flores-specific prison calls (these calls are technically prison calls and not jail calls) has been assigned the computer file name "3-10-09 disc. Darwin Flores jail calls.xls" and is attached to the Leung Declaration as Exhibit O.

As the Government's cover letter (see Leung Declaration Exhibit A) explained, the name of each of the jail call indices generally included the discovery date. In addition, each index contains tabs that provides information about calls produced on a particular disk number or folder as well as listed each recorded call by file name, which the Government provided so that defense counsel could locate each specific recording. These indices generally contain the following fields: 1. File Name; 2. Calling From (i.e., number that the inmate was calling from); 3. Calling To; 4. # Assoc To; 5. Participants; 6. Date; 7. Time; 8. Transcribed (if done); 9. Bates Range (if available).

Although the Court did not order it to do so, the Government provided information in category number 4 — "# Assoc To," i.e., the name of the person to whom the outgoing, dialed telephone number was believed to be associated. The Government provided this information because the institutions from which the Government received these calls were not able to provide

-4-

calls based on the identity of an inmate and, as such, participant information was (and remains) largely unavailable. As set forth in the Declarations of Karen Stirling of Glenn Dyer Jail, Tina Kuwitzky of Santa Rita Jail, Lieutenant Charles Flewellen of the San Francisco County Sheriff's Department, Donna McLeran of Marin County Jail, and Donna Bingham of Kern County Jail, at the time these jail calls were recorded and produced, the jails did not have telephone systems that assigned Personal Identification Numbers (i.e., "PINs") to each inmate so that the jail could search for calls based on the identity of a specific inmate. See Stirling Declaration ¶ 3; Kuwitzky Declaration ¶ 3; Flewellen Declaration ¶ 3; McLeran Declaration ¶ 3; Bingham Declaration ¶ 3. Thus, as the Government explained in its cover letter to the defense, in order to even try to pull jail calls for a specific inmate, the Government had to rely on circumstantial limiting factors, notably seeking jail calls that connected to outside numbers that the Government believed were associated with individuals who, in turn, were associated with particular inmates. See Exhibit A at 4. Other factors that the Government also employed to identify jail calls particular to specific inmates were dates and locations within each jail where particular inmates were housed. See Declaration of Special Agent Rocio Franco ¶ 1. All these circumstantial proxies for inmate identity, however, lacked precision, and there was (and remains) no certain method of identifying the participants of each jail call except to have each call reviewed by someone familiar with the voices of the participants to confirm their identities.[1]

### C. The Government's Production of Recording Exhibits on April 26, 2010

On April 26, 2010, pursuant to this Court's order, the Government produced a list of recordings that it intends to introduce in its case-in-chief at trial. See Final 4-26-10 Recording Exhibit List.xls (attached as Exhibit P to the Leung Declaration). This list includes consensual

---

[1] In addition to providing the fourteen recording indices, the Government also produced on April 19, 2010 twenty compact disks of jail calls that it had recently received from the San Francisco County Sheriff's Department. As the Government explained to the defense in its accompanying cover letter (Exhibit A), these recently received calls were requested in connection with the investigation of Luis Herrera, Danilo Velasquez, and Giovanni Hernandez, who were charged in this case in September 2009, and were listed in the index entitled "SF-04082010 MASTER COPY 3 - JAIL CALLS INDEX.xls" (Exhibit N). The Government also explained that some of the calls had already been produced earlier.

1 telephone calls, video recordings, body wires, and select jail calls. The Government provided
2 participant information for each of the recordings on that list, except for a recording of a rap song
3 relating to the 20th Street Clique of MS-13. At this time, the Government does not intend to
4 introduce in its case-in-chief any of the other recordings that it produced to defense counsel.

    **D.**  **Magistrate Court's R&R and the Court's Orders Based on the R&R**

6   On May 24, 2010, the magistrate court issued its R&R regarding the Government's
7 production of indices on April 19, 2010.[2] Based on "input from the defense regarding the
8 ind[ices] that the government produced on April 19, 2010," the magistrate court found that the
9 Government provided participant information in (a) "all" 272 recordings in the DH index; but
10 (b) "only approximately 5% of the 832 DH jail calls;" (c) "approximately 8.6% of the 1,959 non-
11 DH recordings;" and (d) "approximately 5% (based on a preliminary analysis) of the 20 new CDs
12 disclosed on April 19." R&R at 2. The magistrate court also found that the Government
13 "necessarily has 'participant' information within its possession, custody, and control," id. at 3,
14 and that providing participant information for all recordings is merely a simple "clerical" task
15 that the Government can accomplish merely by "access[ing] information it already has, either in
16 its own files or through its cooperating witnesses," id. at 4. The magistrate court further found
17 that "only recently did the government produce all of the audio recordings (including all body
18 wires and consensual monitoring)," although it acknowledged that "obtaining jail calls on a
19 rolling basis . . . is more typical." Id. at 5-6. As explained below, these findings are inaccurate
20 and were made without any input from the Government.

21   Based on these findings, the magistrate court recommended that the Court order the
22 Government to produce an index of all the recordings — including those the Government does
23 not intend to use in its case-in-chief — with entries in 100% of the participant fields by June 7,
24 2010, at noon. The R&R further suggests additional items that the Government should include in
25 its indices and suggests that the Government should be given an additional four days to complete

---

27   [2] In the Court's May 24, 2010, Order (Docket no. 1761), it referred to the R&R (Docket
no. 1762) as being filed on May 21, 2010. The docketed version of the R&R, however, is dated
28 May 24, 2010. The Government first learned of and reviewed the R&R on May 24, 2010.

its index if it agrees to provide the additional items. These additional items are "the type of call (body wire, consensual call, jail or video), the discovery production date, the bates or identification range, the participants, the date and time, the monitoring agent, the informant making the recording, and a cross-reference to any transcript," as well, as "a summary of the recording akin to that found in the ordinary monitoring logs/line sheets disclosed as a matter of course in the ordinary wiretap case." Id. at 7. The R&R provided 14 days for the Government to file any objections. See id. at 8.

On May 24, 2010, this Court issued an order (the "May 24 Order") essentially adopting the findings of the R&R and "independently order[ing]" the Government to produce an index with entries in 100% of the participant fields by June 7, 2010, at noon. As suggested by the R&R, this Court also directed the Government to consider supplementing the index with the additional information set forth in the R&R, and if the Government were to do so, gave the Government until June 11, 2010, to submit the full index.

The Government was not given an opportunity to object to the R&R before the Court issued the May 24 Order based on the R&R; indeed, the Government received the May 24 Order (Docket no. 1761) before it received the R&R (Docket no. 1762). As such, the Government requested an opportunity to do so, pursuant to Rule 59 of the Federal Rules of Criminal Procedure, and requested that the Court stay its May 24 Order so that due consideration could be given to the Government's objections before the Court issues orders based on the R&R. On May 25, 2010, the Court ordered the Government to provide any objections to the R&R by noon on May 31, 2010, but denied the Government's request to stay its May 24 Order. The Court did, however, grant the Government an extension to June 9, 2010, to comply with its May 24 Order based on the now-disputed R&R.

On May 26, 2010, apparently based on the R&R's mistaken suggestion that ICE failed to create a "robust index" of the recordings it created, the Court *sua sponte* ordered the Government to include with its objections to the R&R sworn declarations from all law enforcement agents who supervised the recordings at issue, "addressing (a) how they documented the monitoring of the conversations and participants in the recordings, and (b) how those records have been

1 maintained from the time of their creation through the present." (Docket no. 1785). At the
2 request of the Government, on May 28, 2010, the Court extended the filing date of these
3 declarations to June 7, 2010.

## II. APPLICABLE LAW

Pursuant to 28 U.S.C. § 636(b)(1), a district court may refer certain matters, including discovery issues, to a duly appointed magistrate judge. The magistrate judge is then to issue findings of fact and recommendations to the district court. See id.

Section 636(b)(1) also provides:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

As set forth in § 636(b)(1), the standard of review for a magistrate court's recommendations must be *de novo*: "A judge of the court *shall* make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." (Emphasis added). The Ninth Circuit has emphasized this review requirement and stressed that *de novo* review must be rigorous. See Brown v. Roe, 279 F.3d 742, 744 (9th Cir. 2002) (holding that the district court must "actually" exercise *de novo* review instead of merely "summarily accepting or denying" an objection to a magistrate court's findings and recommendations); see, e.g., United States v. Song Ja Cha, 597 F.3d 995, 1003 n.7 (9th Cir. 2010) (citing Brown and noting that "boilerplate" statement that objections to magistrate court's findings and recommendation "are not well-taken" is insufficient review).

## III. DISCUSSION

The Government respectfully objects to the R&R. Substantively, some of the R&R's factual findings and assumptions are mistaken wrong and unsupported by the record. Among other things, the Government has provided all known participant information for all consensual recordings that it has produced. It has also produced all known participant information for the

-8-

jail calls that it intends to use in its case-in-chief. Moreover, contrary to the R&R's assumptions, the Government simply does not possess information for all the jail calls it produced, nor is such information readily available.

In addition to these substantive objections, from a procedural standpoint, the Government believes that had it been afforded the opportunity to complete and clarify the record before the magistrate court, the R&R would have more accurately reflected the Government's compliance with this Court's previous discovery orders.

### A. The R&R Contains Inaccuracies and Incorrect Assumptions.

#### i. *The Government Produced Participant Information For All Consensual Recordings and the Jail Calls It Intends to Use.*

First and foremost, man of the R&R's factual assertions regarding the indices produced by the Government are mistaken. As set forth above, the universe of recordings produced in this case can be divided into two broad categories: (1) consensual recordings, which include consensual telephone calls, video recordings, and body wires; and (2) jail calls. The consensual recordings were made through the use of informants (or, on occasion, an undercover agent) who were participants in or witnesses to the recorded communications, while the jail calls were obtained through requests or subpoenas to various jails.

All the consensual recordings have been listed in two indices, the DH Index (Exhibit B) and the All Other Index (Exhibit C). All known participants that have been identified by the Government for the consensual recordings have been listed in these two indices. See Exhibits B and C.

In contrast, although all the jail calls have been listed in indices, participant information for the vast majority of the jail calls has not been filled in because participant information is not readily available. As set forth in the declarations of Karen Stirling, Tina Kuwitzky, Lieutenant Charles Flewellen, Donna McLeran, Donna Bingham, and Special Agent Rocio Franco, because jail calls cannot be pulled based on a particular inmate, the Government obtained jail calls using other search parameters, including date, location within a jail from which a call was made, and outgoing telephone numbers believed to be associated with individuals who were associated with

a particular inmate. After receipt of the calls (which the Government produced to the defense within two weeks of its receipt, as required by the Court's standing discovery order), the Government endeavored to review them as resources permitted in order to see if the calls were relevant and, if so, the nature of the calls. Thus, even though participant information was not readily available, the Government provided all information it possessed regarding these jail calls to the defense.

For example, on sheet 1 of Exhibit N ("SF-04082010 MASTER COPY 3 - JAIL CALLS INDEX.xls"), the Government provided, among other information, the location within the jail from which the listed calls were made, the numbered called ("CALLING TO") as well as the name of the person to whom the dialed number was believed to be associated (# ASSOC TO"). If, after review, a participant was identified, participant information was provided as well. Thus, the first five lines of sheet 1 of Exhibit N consist of the following information:

| | FILE NAME | CALLING FROM | CALLING TO | #ASSOC TO | PARTICI-PANTS | DATE | TIME | DURATION | TRANSCRIBED | BATES RANGE |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1237139740_419.wav | CJ3-Pod-2-B-2 | 4154247005 | Matilde Cortez | | 20090315 | 1055 | 0 | | |
| 2 | 1237147354_420.wav | CJ3-Pod-2-B-4 | 4154247005 | Matilde Cortez | | 20090315 | 1302 | 0 | | |
| 3 | 1242942114_120.wav | CJ9-Holding-15 | 4152400634 | Danilo VELASQUEZ | | 20090521 | 1441 | 9 | | |
| 4 | 1236277847_198.wav | CJ9-Holding-10 | 4152400634 | Danilo VELASQUEZ | | 20090305 | 1030 | 13 | | |
| 5 | 1236301942_198.wav | CJ9-Holding-10 | 4152400634 | Danilo VELASQUEZ | Luis Hererra, UM, "Melvin" | 20090305 | 1712 | 168 | DRAFT TRANSCRIPT | T011449-T011457 |

Exhibit N, sheet 1, items 1-5.

Significantly, it bears repeating that although the Government could not and cannot provide participant information for most of the jail calls it has produced because the jails' telephone systems did not capture such information, it has produced participant information for all of the jail calls that it intends to use in its case-in-chief. See Exhibit P (Final 4-26-10

Recording Exhibit List.xls).

The R&R, in contrast, regrettably paints an inaccurate picture of the indices. For instance, based on input "solicited" from the defense and not on the indices themselves (or, for that matter, input from the Government, which was not sought), the R&R found that

> (a) all 272 recordings in the DH index have entries in the "participant" field, (b) only approximately 5% of the 832 DH jail calls have "participant" entries, (c) approximately 8.6% of the 1,959 non-DH recordings have "participant" entries, and (d) approximately 5% (based on a preliminary analysis) of 20 new CDs disclosed on April 19 have "participant" entries.

R&R at 2.

In addition, the R&R also asserts that

> Based on CJA submissions, 100% of the 272 DH recordings have "participant" fields, and the government has transcribed 240 of the 272 recordings. The remaining audio recordings apparently are on ind[ices] that generally do not identify participants. The recordings include the following: (a) consensual phone calls, (b) video recordings, (c) body wires, and (d) jail calls.

R&R at 4; see id. at 6 (assuming without basis that "the government apparently has transcribed and identified *only* the DH body wires" (emphasis added)).

These assertions are inaccurate. The R&R's reference to "DH jail calls" and "non-DH recordings," and the percentages calculated for them are perplexing because they do not correspond to any useful category of recordings. As noted above, there are two broad categories of recordings: (a) consensual recordings — made by ICE and the FBI — and (b) jail calls. Of these two categories, all consensual recordings have been indexed with participant information. See Exhibits B (DH Index) and C (All Other Index).

Likewise, the R&R assertion that (a) consensual phone calls, (b) video recordings, and (c) body wires have not been indexed with participant information is also mistaken. See id. Indeed, Mark Rosenbush, Esq., counsel for Moris Flores, acknowledged at the May 27, 2010 hearing that all consensual recordings have been indexed with participant information.[3]

In short, the R&R's fundamental premise — that the Government has provided participant information "only for the DH body wires and not for the other recordings" such as

---

[3] The Government is seeking a transcript of the May 27, 2010, hearing and will submit it when it is received if there are any disputes about this point.

-11-

telephone calls and videos, R&R at 4 — is simply not accurate. Indeed, the affirmative factual evidence is to the contrary. See Exhibit B and C. Even Mr. Rosenbush has confirmed that all consensual recordings have been indexed with participant information. The R&R's factual foundation, thus, is flawed and, as a result, the R&R should not be adopted.

            ii.      *The Government Does Not Have Further Participant Information for Jail Calls.*

In addition to the factual error regarding the indexing of participant information, the R&R assumes that the Government has participant information for all jail calls in its possession, reasoning "to obtain jail calls, the government requests them by inmate name, and the jail produces a CD with the inmate's calls. In short, the government must know the participants." R&R at 3. The R&R goes on to conclude that "identifying known participants on jail calls . . . is a simple, clerical task that requires looking at the original subpoenas or requests to the jail (which must have included inmates' names) and cross-referencing the responses from the jail to the index," R&R at 4, that would require merely "a modest use of clerical resources," R&R at 6.

The R&R's conclusory assumptions may apply to other investigations familiar to the magistrate court, but they are not applicable to the instant case. As set forth in the declarations of Karen Stirling, Tina Kuwitzky, Lieutenant Charles Flewellen, Donna McLeran, Donna Bingham, and Special Agent Rocio Franco, directly contrary to the R&R's assertions, jail calls cannot be pulled based on the names of the inmates because the telephone systems at the relevant jails during the relevant times periods have no way of linking particular calls to particular inmates. See Stirling Declaration ¶ 3; Kuwitzky Declaration ¶ 3; Flewellen Declaration ¶ 3; McLeran Declaration ¶ 3; Bingham Declaration ¶ 3; Franco Declaration ¶ 1. Rather than being a modest clerical task, identifying participant information for jail calls is a monumental undertaking that requires someone familiar with the voices of the inmates as well as other participants in the call to review each recording.[4]

---

[4] All things considered, the defendants — who participated in any relevant calls and know with whom they spoke — have a distinct advantage over the Government with respect to identifying participants in the jail calls.

As a result, in recognition of the difficulty of this endeavor, the Government has limited the jail calls it intends to use in its case-in-chief and has provided whatever known participant information it possesses for these calls. See Exhibit P. In addition, the Government has also provided to the defense information for the underlying the jail call searches the Government undertook, including, where applicable, the location in jail from which a call was made, the calling date and time, the number called, and the name of the person associated with the number called. To do this, the Government reviewed its files to determine the names associated with specific outgoing telephone numbers that it requested or subpoenaed. For other calls that it received — for example, where the jail facility simply provided all calls recorded in a particular housing unit within the jail — the Government provided names associated with certain numbers that it learned from public database searches. The Government produced this information even though it was not included in the Court's order because it was the closest approximation to participant information that it had.

The Government has provided all information in its possession about the participants on the jail calls.

     *iii.*  *The Government Provided Almost All Discovery In Electronic Format.*

The R&R suggests that the Government provide discovery in electronic format that allows for basic searches, assuming that the Government has not. See Report at 5. This assertion is puzzling. The Government has produced almost all discovery, including reports of investigation, in electronic format, specifically as PDF files, and the recording indices themselves were produced as Excel spreadsheets precisely so that the defense can sort and search them electronically. Based on the Government's discussion with the copy vendor in this case, it is the Government's understanding that the PDF files, post-production, were converted into a searchable, electronic format. Not all discovery, of course, can be converted into a searchable format. For instance, photographs or handwriting generally cannot be made subject to text-based searches. However, the Government has endeavored to make its discovery as accessible to the defense as reasonably possible. The Government respectfully invites the Court to confer with the discovery coordinator in this case and/or the copy vendor, Colour Drop, if any concerns remain

on this issue.

          *iv.*    *The Government Has Complied with All Rule 16 Discovery in a Timely Fashion*

The R&R states that "only recently did the government produce all of the audio recordings (including all body wires and consensual monitoring)." R&R at 5.[5] This is also mistaken. As of April 30, 2009, the discovery cut-off date set by the Court — with the exception of five to eight files that were inadvertently left out during the initial massive data transfers and several additional files that later had to be recopied due to technical problems with the files — the Government had produced all of the consensual recordings in this case by that date. The Government also provided jail calls as it received them, with most produced by April 30, 2009, and new jail calls produced within two weeks of receipt, in accordance with the Court's standing discovery order that new discovery be produced within two weeks of receipt. As noted above, the April 19, 2010, production of 20 compact disks of jail calls consisted of jail calls that were only recently received from San Francisco County, and which were subponaed in connection with the three defendants who were last added to this case, Luis Herrera, Danilo Velasquez, and Giovanni Hernandez. Thus, contrary to the R&R assertion, the defendants have had the vast majority of these recordings for more than a year, including the consensual recordings that constitute the heart of this case.

          *v.*    *The Government Has Already Produced Much of the Other Information that the R&R "Recommends"*

The R&R states that the "[b]ecause the government has no complete index and must review its documents in order to complete the index that the district court ordered previously, . . . the government [should] . . . consider supplementing the index with additional fields." R&R at 6-7. Those additional fields include: the type of call, the discovery production date, the bates or

---

[5] The R&R also asserts that producing an index of all the recordings is "basic discovery that ordinarily is produced upon indictment." The Government is aware of no legal authority that would define "basic discovery" as an index of recordings, the most problematic of which — i.e., the jail calls — did not even exist until after the indictment and arrest of the defendants.

-14-

identification range, the participants, the date and time, the monitoring agent, the informant making the recording, and a cross-reference to any transcript. See R&R at 7. As discussed above, the Government has created the index that the district court ordered previously, namely, an index that encompasses all recordings turned over in discovery, includes the date of the conversation, the participants in the conversation (to the extent known), and makes it traceable to the corresponding recordings. As explained above, the Government's files do not contain the participant information for the jail calls ordered by the R&R; the jail calls at issue here are not recorded or maintained based on inmate name or identity. The only way to provide all participant information for the jail calls is for someone who can recognize all the voices possibly recorded on the jail calls — including all defendants and all the individuals known to the defendants — to listen to the actual calls, which is an impossible task under the circumstances.

In any event, as a review of the April 19, 2010, indices make clear, the Government has already provided much of the information in the suggested additional fields. The Government has provided the discovery production date, bates or identification range, the participants (where known), the date, and a cross-reference to any transcript. If the informant making the recording is heard on the recording, he is identified as a participant. Thus, the R&R's assumption that such information has not been provided is incorrect. See, e.g., Exhibits B (DH Index), C (All Other Index), N ("SF-04082010 MASTER COPY 3 - JAIL CALLS INDEX.xls).

The R&R further suggests that the Government should consider including — "to the extent that the material is referenced in the documents or materials being reviewed — a summary of the recording akin to that found in the ordinary monitoring logs/line sheets disclosed as a matter of course in the ordinary wiretap case." R&R at 7. This is not, however, an "ordinary wiretap case." In fact, there was no Title III wiretap utilized in this case at all. To the extent that there are reports of investigation describing a recording, and can serve as a "summary of the recording," such reports were provided to the defense at least a year ago. Defense counsel have made clear that they are aware of such reports, and have represented in court that they have relied on such reports in prioritizing their own transcriptions.

The R&R also suggests that the Government consider producing reports of investigation

that may include a defendant's statement. See R&R at 7. The Government is aware of its Rule 16 obligations and has already produced all reports of investigation that include summaries of a defendant's statement. Post-arrest and similar testimonial statements made to known law enforcement officers were provided only to the declarant defendant. All other types of statements not covered by the Jencks Act were generally produced, including summaries of information provided by informants.

### vi. The Government Has Been Cooperative With the Defense

The R&R also asserts that the Government appears unwilling to collaborate with the defense to produce a joint index. See R&R at 6. The Government disagrees with this assertion. The factual support for this assertion appears to be the defendants' April 14, 2010 status memo. (Docket no. 1641). A close look at this status memo, however, will justify any reluctance the Government has shown in collaborating with the defense. Rather than seeking assistance with constructing the index ordered by the Court, the defendants, instead, demanded far more information, notably:

> Type (Consensual Recording, Body Wire, Jail Call or Video)
> Discovery Production Date
> Disk# / Disk Label
> Bates Range (e.g., DH#)
> Government Description of Recording
> Date of Recording
> Participants
> Location of Recording (geographic)
> Time of Recording
> Special Agt. Supervising Recording
> Informant Making Recording
> Reference to ROI/302
> Filename (of the recording as delivered to us)
> Corresponding Govt Translation
> Length of Recording

April 14, 2010 Status Memo at 2.

The information sought by the defense is not required under Rule 16 or in the Court's orders. Indeed, some of the information sought — e.g., "Government Description of Recording" — essentially asked the Government not just to produce work product, but to create work product to produce to the defendants. Other information sought by the defense merely sought a preview of the Government's case, e.g., probing how the Government would establish a

foundation for each recording ("Informant Making Recording" and "Special Agt. Supervising Recording"). While the Government has been willing to provide reasonable assistance to the defense, it continues to object to any additional obligations beyond those required by Rule 16 and the law.

### B. Procedural Objections

In addition to the factual inaccuracies and assumptions underlying the R&R, the Government also would respectfully raises procedural objections to the R&R and to its adoption by the Court.

First, on its face, the R&R seems to indicate that many of its factual findings were based solely on information provided by the defense, with no opportunity for the Government either to review the information or to submit information. See, e.g., R&R at 2 ("As part of its evaluation of the CJA referral, this Court solicited input from the defense regarding the ind[ices] that the government produced on April 19, 2010, and received the following response."); 4 ("Based on CJA submissions, 100% of the 272 DH recordings have 'participant' fields, and the government has transcribed 240 of the 272 recordings."); 6 (citing defendant's April 14, 2010 status memo for finding of lacking of Government collaboration). Not only has this one-sided approach resulted in an R&R that is inaccurate (see above), but one that is also unfair to the Government. The Government believes that had it been afforded the opportunity to clarify the record for the magistrate court, a fair amount of extra work could have been avoided.

Second, the Government also respectfully submits that the Court's May 24 and May 26 Orders based on the R&R were issued without providing the Government with any opportunity to object to the R&R. Indeed, the Government received the May 24 Order (Docket no. 1761) before it received the R&R (Docket no. 1762). Under 28 U.S.C. § 636(b)(1) and Fed. R. Crim. 59, the parties have the right to object to any findings and recommendations issued by a magistrate court. The Government respectfully objects to the Court's issuance of the May 24 Order based on the unexamined R&R, as well as to the Court's further issuance of the May 26 Order based on the R&R.

//

**IV. The Court Should Not Adopt the R&R and Should Vacate the May 24 and 26 Orders Issued Based on the R&R**

The R&R recommended, and the Court ordered, that the Government produce an index with entries in 100% of the participant fields. As explained above, the Government has already produced an index with entries in 100% of the participant fields for all consensual recordings. In addition, the Government has already produced an index of all the recordings it intends to introduce in its case-in-chief at trial, including jail calls, and has provided participant information for each of those recordings. While the Government has not provided information for all jail calls produced, it cannot do so for the reasons discussed above. In light of the facts provided above, the Government respectfully requests that the Court vacate its May 24, 2010 Order, as it is simply impossible for the Government to comply.

The Government also respectfully requests that the Court vacate its May 26 Order requiring the Government to provide declarations from law enforcement agents about the monitoring of consensual recordings by informants. This order was premised on the R&R's incorrect assertion that the Government had not provided participant information about the consensual recordings, and its related concern that the Government had not preserved information about the participants in those recordings. Given that the R&R's finding about the lack of participant information for the consensual recordings was incorrect — Mr. Rosenbush himself has confirmed that the Government has provided participant information for all

//

1  consensual recordings — and the Government has, in fact, already provided participant
2  information for all of the consensual recordings, the Court should vacate its May 26, 2010 Order
3  as well.

5  DATED: May 31, 2010

6                                        Respectfully submitted,

7                                        JOSEPH P. RUSSONIELLO
                                      United States Attorney

9                         By:   /s/
                                      W.S. Wilson Leung
10                                     Christine Y. Wong
                                    Assistant United States Attorney

12                                     Theryn G. Gibbons
                                    Trial Attorney