1 SUSAN M. RAFFANTI, ESQ. - SBN 120993
Law Offices
2 483 9th Street, Suite 200
Oakland, CA 94607
3 (510) 451-2825
sraffanti@gmail.com
4
JOHN T. PHILIPSBORN, ESQ. - SBN 83944
5 Law Offices of John T. Philipsborn
507 Polk Street, Suite 350
6 San Francisco, California 94102
(415) 771-3801
7 jphilipsbo@aol.com

8 Attorneys for Defendant JONATHAN CRUZ-RAMIREZ

9

10                IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

| | |
|---|---|
| 13 UNITED STATES OF AMERICA, )<br>                                  )<br>14     Plaintiff,            )<br>                                  )<br>15 vs.                               )<br>                                  )<br>16 JONATHAN CRUZ, et al.,   )<br>                                  )<br>17     Defendants.      )<br>_____) | Case No. CR 08-730 WHA<br><br>**CRUZ-RAMIREZ MOTION FOR JUDGMENT OF ACQUITTAL (FRCP 29); MEMORANDUM IN SUPPORT;**<br><br>**Dept: The Honorable William H. Alsup, District Judge** |

18

19     I.     **INTRODUCTION**

20         This is the Cruz-Ramirez motion for judgment of acquittal under Federal Rule of

21 Criminal Procedure 29(a). This motion for judgment of acquittal can be made after the

22 close of all the evidence. According to the rule, the Court "... must enter a judgment of

23 acquittal of any offense for which the evidence is insufficient to sustain a conviction."

24 FRCP 29(a). It is addressed to all counts naming Mr. Cruz Ramirez. On June 30, 2011,

25 the Court allowed Mr. Cruz-Ramirez to make this motion verbally at the close of the

26 Government's case by flagging potential jurisdictional issues on the basis that this written

27 argument would then follow. Thus, the Cruz motion was timely made. This pleading states

28 the specific arguments supporting the Cruz-Ramirez Motion

This motion is addressed to several counts of the current redacted trial Indictment. The redacted Indictment, filed on March 31, 2011 is Doc. 3878-1. The redacted Indictment, which is modeled on the Third Superseding Indictment, charges a violation of 18 U.S.C. §1962(d) conspiracy to conduct the affairs of a racketeering enterprise in Count 1. The pattern of racketeering is charged as involving crimes under California as well as Federal law (redacted Indictment at pp. 8-9).[1] Count 2 (redacted Indictment at p.10) charges a conspiracy to commit VICAR murder in violation of 18 U.S.C. §1959(a)(5). Count 3 charges a conspiracy to commit assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. §1959(a)(6) (redacted Indictment at p.12). As with Count 2, many of the allegations are incorporated by reference from Count 1.

Count 4 charges a violation of 18 U.S.C. §924(c) though the count is not alleged against Mr. Cruz-Ramirez. Count 5 alleges the VICAR murder of Mr. Joldic on March 29, 2008 - it is charged against Mr. Lopez only (pages 13-14). Count 6 charges another murder in aid of racketeering on March 29, 2008, also against Mr. Lopez. Count 7 (p.14) charges a violation of 18 U.S.C. §924(j), use or possession of a firearm in furtherance of a crime of violence resulting in murder. This count also refers to the March 29, 2008 killings. Count 8 charges a violation of 18 U.S.C. §924(c), also in relation to the March 29, 2008 shootings. Count 9 charges Mr. Lopez with a violation of 18 U.S.C. §924(c) in connection with his possession of a weapon on March 30, 2008.

Count 10 charges the murder in aid of racketeering of Juan Rodriguez on May 31, 2008 against Mr. Cruz-Ramirez. Count 11 charges Mr. Cruz-Ramirez with use or possession of a firearm in furtherance of a crime of violence resulting in murder in violation of 18 U.S.C. §924(j) in connection with the Rodriguez killing. Count 12 charges a violation of 18 U.S.C. §924(c) against Mr. Cruz-Ramirez (use or possession of a firearm in furtherance of a crime of violence), also in connection with the killing of Mr. Rodriguez.

---

[1] The unredacted version of the Third Superseding Indictment sets forth more than a hundred racketeering acts.

Count 13 charges murder in aid of racketeering of Armando Estrada on July 11, 2008 (Indictment at p.17). This count is charged against Mr. Cruz-Ramirez and Mr. Herrera, as is Count 14, a violation of 18 U.S.C. §924(j), use or possession of a firearm in furtherance of a crime of violence. Count 15 charges both Mr. Cruz-Ramirez and Mr. Herrera with a violation of 18 U.S.C. §924(c) (Indictment at p.18).

Count 16 charges Mr. Cruz-Ramirez alone with use or possession of a firearm on July 25, 2008.

Count 25 charges Mr. Guevara with assault with a dangerous weapon in aid of racketeering in connection with a December 26, 2007 incident. Counts 26 through 30 charge Mr. Guevara with various further crimes against the victims of the incidents of December 26, 2007, including assault with a deadly weapon, and attempted murder in aid of racketeering.

## II. ARGUMENT AND AUTHORITIES

The Ninth Circuit has explained that a motion for judgment of acquittal is a test of "... whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt, viewing the evidence in light favorable to the Government." *United States v. Figueroa-Paz*, 468 F.2d 1055, 1058 (9th Cir. 1972). The Ninth Circuit has also explained that in considering a Rule 29 motion, the District Court should look at the state of the evidence and determine whether the facts presented to the jury could not rationally support the defendant being guilty beyond a reasonable doubt on the basis of that evidence. *United States v. Scott*, 452 F.2d 660, 662 (9th Cir. 1972); *accord United States v. Rojas*, 554 F.2d 938, 942-943 (9th Cir. 1997).

### a. The evidence is insufficient with respect to Count 1.

Count 1 charges a conspiracy to conduct the offenses of a RICO enterprise (18 U.S.C. §1962(d)). The evidence identifies 20th Street as an 'association-in-fact' charged under 18 U.S.C. §1962(d). An association-in-fact is generally defined in the Ninth Circuit pattern instructions, Instruction 8.161, which references 18 U.S.C. §1962(c). In the comments to the instruction, the Ninth Circuit references the U.S. Supreme Court decision

in *Boyle v. United States*, ____ U.S. ____, 129 S.Ct. 2237 (2009) defining an association-in-fact. As explained in the arguments (b) and (c) below, there is insufficient evidence to support Court 1.

      **b.** **The Government has not established Mr. Cruz-Ramirez's agreement to conduct the pattern of racketeering defined in the statutes referenced at pages 8 and 9 of the redacted Indictment.**

Count 1 is charged by setting forth "offenses chargeable under the following provisions" as pertinent. The references to California law are not the main concern of the Cruz-Ramirez defense. Rather, there is no specific evidence that Mr. Cruz-Ramirez's participation in any conspiracy to violate Federal narcotics laws, assuming that the Court still believes there is sufficient evidence to support Count 1. Nor is there evidence that Mr. Cruz-Ramirez joined an enterprise, the agreed-upon contours of which included the commission of robberies. The Cruz-Ramirez defense understands that there is evidence that certain persons committed robbery, but the linkage of those robberies to an overall racketeering conspiracy that Mr. Cruz-Ramirez was involved in is lacking. The defense understands that the Government may have chosen to "shorthand" the otherwise enumerated overt acts found in the unredacted Third Superseding Indictment. Even then, however, there is insufficient evidence that these classes of crimes referenced applied to Mr. Cruz-Ramirez.

There was testimony from Abraham Martinez; Jaime Martinez; Jose Alvarado, and others about their understanding of the contours of the enterprise and the expectations associated with it. The Government's evidence does not support the view that drug sales and robberies were activities that individuals associated with 20th Street knew that they were agreeing to.

      **c.** **While there was evidence of the existence of a 20th Street clique, and there were multiple references to 'the gang', the evidence in this case supports the view that there were multiple associations, and that not all of the defendants were associated with the one enterprise charged.**

The U.S. Supreme Court has described types of enterprises as associations-in-fact. In *Boyle v. United States, supra*, 129 S.Ct. 2237, the U.S. Supreme Court reviewed in

some detail the definitions of RICO enterprises. One feature of any RICO enterprise is that it involves "... a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 580-583 (1981). An enterprise "... is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id*. at 583. In *Boyle, supra,* the Court focused on an association-in-fact enterprise which: "... must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity to permit these associates to pursue the enterprise's purpose." *Id.* at 2244-45.

The 'enterprise' charged in Count 1 of the Third Superseding Indictment (redacted) is MS-13 (Redacted Indictment at p.5). The named defendants are alleged to be members of MS-13's 20th Street clique. The enterprise that some alleged conspirators joined (see the testimony of Jose Alvarado, for example) was a local group. The notion of taking outside direction of other persons or cliques was controversial. Some rejected it entirely. PLS allegedly 'green-lighted' 20th Street. There were factions within 20th Street, some of which literally fought with others. Some alleged faction leaders were targeted for violence by others. This was not an association-in-fact as defined in *Boyle*. Indeed, Jaime Martinez testified during his redirect examination on July 8, 2011 that he was able to avoid the killing of Dreamer by referencing San Francisco's rules on addressing suspected snitches, which he contrasted to those adhered to elsewhere. This testimony also supported the view that the San Francisco clique was contoured by the ad hoc directives of its influential associates - like Martinez.

Indeed, the transcripts of various meetings painstakingly introduced into evidence by the Government, as well as the testimony to date, indicates that 20th Street is not a group of persons associated for a common purpose. Rather, it was a series of associations, of varying kinds, ending with at least two factions pitted against one another (the younger clique members pitted against the older guys), and no steady relationship with MS in the way that the Government charged in Count 1.

Testimony elicited during the Government's case-in-chief indicated that at various times other factions of the alleged international "MS" placed 20th Street on a chopping block; considering the clique to be dysfunctional, disorganized, and in need of wholesale changes of purpose, management and organization.

The alleged associations that existed beginning in 2005 are even more ambiguous because they were managed and/or advised between the latter part of 2005 and the end of 2008 by "managers" who were working with the Government - witnesses 1211 and 1218.

Since the Court has given an indication that it is likely to deny this motion, the defense raises this particular issue which has not been addressed by the Court. It also notes that it is likely to argue this issue to the jury if the Court overrules this part of this motion.

**d.     Conspiracy to commit murder in aid of racketeering - Count 2.**

There is, clearly, a distinction between a RICO conspiracy as charged in Count 1, and the more specific conspiracy charged in Count 2. Conspiracy to commit VICAR murder requires an agreement to commit the underlying offense, which, in the case of murder, is an offense that requires a specific level of intent as discussed by the Ninth Circuit in *U.S. v. Croft*, 124 F.3d 1109 (9th Cir. 1997), a case in which the issue was not a conspiracy to

commit VICAR murder, but rather to commit murder under the Federal murder statutes 18 U.S.C. §1111.

Count 2 charges a specific group of persons with conspiracy to commit murder, perhaps on the theory that anyone who agreed to be a member of 20th Street was 'ratifying' an ongoing conspiracy to commit murder. This view, however, is not supported by the evidence - particularly evidence from persons like Jaime Martinez and Jose Alvarado whose position was that for a period of time, being a member of 20th Street might have involved participation in fights, but not the automatic endorsement of the use of deadly force. Indeed, such was the variation and statement of the various "rules" characterizing 20th Street that some persons who testified as cooperators did not indicate

1  that agreement to commit murder had anything to do with the rules they were familiar
2  with.
3      As evidenced by the discussion in *Croft*, knowledge that homicides might have
4  occurred, or might occur in the future, does not in itself demonstrate conspiracy to commit
5  murder. *Id.* at 1122-24.
6      While the Court appeared satisfied during its discussion of Rule 29 motions (June
7  30, 2011) that there was sufficient evidence on each of the counts charged, there is
8  insufficient evidence to support the crime charged in Count 2. While there may have been
9  various agreements between sub-groups of the charged defendants to commit murder - that
10  is not what is charged here.
11      There is insufficient evidence to support Count 2.

    **e.   There is insufficient evidence to support Count 3 - the conspiracy to commit assault with a dangerous weapon in aid of racketeering.**

14      The analysis offered immediately above applies here as well. The Government has
15  charged Counts 1 through 3 as essentially one crime - anyone who conspired to engage in
16  the activities of the racketeering enterprise that was 20th Street of necessity conspired to
17  commit murder and/or assault with a dangerous weapon in aid of racketeering. There was
18  evidence that various persons engaged in assaultive conduct. There is insufficient
19  evidence of a generalized agreement to commit assault with a dangerous weapon in aid of
20  racketeering as alleged in Count 3.

    **f.   Count 10 - murder in aid of racketeering of Juan Rodriguez.**

22      Mr. Cruz-Ramirez is aware of the evidence that has been produced on this count
23  regarding the May 31, 2008 killing of Juan Rodriguez. Mr. Rodriguez was shot and killed
24  while sitting in his car on Huron Street. The Government has linked Mr. Cruz-Ramirez to
25  the shooting mainly through a series of statements attributed to him. The Cruz-Ramirez
26  defense has introduced evidence to demonstrate that Mr. Cruz-Ramirez was not regarded
27  as a reliable declarant by those who met him. These are, admittedly, matters that the jury
28  normally addresses.

However, there is another reason that Count 10 should not go to the jury. The linkage between the alleged enterprise and the killing of Juan "Patas" Rodriguez does not exist - in some measure because the older faction of 20th Street viewed Patas as an ally - someone whose presence was 'good for business'. This was not a killing in aid of the affairs of the racketeering enterprise. Moreover, while the younger faction may have been intent on taxing the group that Mr. Rodriguez was associated with (according to some of the fractured testimony on this point), the fallout of the Patas shooting was violence between affiliates of 20th Street and the so-called "Nieros", which allegedly was a motivating force for the shooting at 20th and Mission in July, 2011.

Under *U.S. v. Banks*, 514 F.3d 949, 964-965; 969-970 (9th Cir. 2008), there must be evidence that the act was committed as an integral aspect of organizational membership. The accused's general purpose (at the very least) in the commission of the violent act must be to enhance his status within the charged enterprise. Incidental or peripheral activity does not qualify.

Even assuming, for the sake of argument, that 20th Street 'glorified' individuals seen as killers, clearly, the profit-making and geographical control functions and relationships with the 'Nieros' of the 20th Street clique were negatively impacted because of the Patas killing. Far from being applauded for his alleged actions in killing 'Patas' (which are disputed by the Cruz-Ramirez defense), if Mr. Cruz-Ramirez did kill Patas, as explained by both Abraham Martinez and Jaime Martinez, the killing crossed the line. It was not enterprise business. It showed a misunderstanding of what was in the interest of 20th Street. For that reason, there is insufficient evidence to support jury consideration of the matter.

**As to Count 13 (VICAR murder, Armando Estrada)**

The Cruz-Ramirez defense understands that there are factual disputes between the parties which will be considered jury issues with respect to the July 11, 2008 killing of Armando Estrada. To date, Mr. Herrera has been identified as the shooter, though he points to varying statements by Mr. Cruz-Ramirez as evidence of the latter's culpability.

1 The Government's position is that both men are culpable for the homicide, based on the
2 Government's theory that Mr. Herrera was the shooter, and Mr. Cruz-Ramirez the driver -
3 and that evidence including phone records and text messages support this view.
4   For Rule 29 purposes, the defense applies the above-made *Banks* argument with
5 respect to this killing.

6   **The *Banks* argument applies to Counts 11, 12, 14 and 15**

7   For reasons argued above, the analysis linking VICAR murders to elements of
8 enterprise membership and enterprise purpose discussed in *U.S. v. Banks*, 514 F.3d 949,
9 964-965; 969-970 is equally applicable to the crimes involving weapon use and possession
10 charged under 18 U.S.C. §924(j) (Counts 11 and 14), and 18 U.S.C. §924(c) (Counts 12
11 and 15). If the underlying murders have an insufficient enterprise 'hook', then the
12 associated weapons counts would not have them either. In addition, assuming, for the
13 sake of argument, that the Court accepts the above-made argument that there is insufficient
14 evidence of an association-in-fact enterprise under the *Boyle, supra*, definition, then there
15 is no basis for pursuing the weapons use crimes related to the killing of Mr. Rodriguez or
16 Mr. Estrada.

17   **General jurisdiction issues prohibiting conviction of the firearms counts alleged in Counts 11, 12, 14, 15, and 16**
18

19   During the course of brief arguments on the Rule 29 motions, Mr. Cruz-Ramirez
20 indicated that he wanted the time to assess whether the statutory violations alleged under
21 Title 18, Sections 924(c) and (j) required proof of 'traditional' Federal jurisdiction -
22 namely the establishment of the travel of the various firearms in interstate commerce.
23   Having reviewed the issue, the Cruz-Ramirez defense agrees with the Government
24 that the statutes do not contain a facial requirement for proof that weapons traveled
25 through interstate commerce. The Cruz-Ramirez defense is aware that a number of courts
26 have decided that Congress can regulate firearms-related crime within the framework of its
27 power to regulate commerce. See, generally, *U.S. v. Lopez*, 514 U.S. 549 (1995);
28 *Huddleston v. U.S.*, 415 U.S. 814 (1974); also *U.S. v. Stewart*, 451 F.3d 1071 (9th Cir.

2006) reviewing 18 U.S.C. §922(o) under a Commerce Clause analysis; and *U.S. v. Harris*, 108 F.3d 1107, 1109 (9th Cir. 1997) [addressing the validity of 924(c)]. The District Court in *U.S. v. Furrow*, 125 F.Supp.2d 1178, 1186 (C.D.Cal. 2000) found that 924(c) is a valid exercise of congressional authority in part because the statute "... contains an expressed jurisdictional element...." Jurisdictional "hooks" in bank robbery cases or other cases covered generally by the Hobbs Act have been viewed as appropriate predicates for the application of various sections of 18 U.S.C. §924, including 924(c) and 924(j), to underlying crimes of violence. See, generally, *U.S. v. Nguyen*, 155 F.3d 1219, 1226-1228 (10th Cir. 1998).

While Congress has generally been deemed to have the power (as conceded herein) to regulate the use of weapons in crimes that affect interstate commerce, the Government did not establish the existence of a specific jurisdictional predicate here, like a Hobbs Act violation.[2]

For the reasons just mentioned, the above-referenced weapons use and weapons possession counts charged against Mr. Cruz-Ramirez should be deemed unsupported by sufficient evidence to go to the jury. In the alternative, if they do go to the jury, the defense respectfully submits that the jurors should be asked to agree on a proper factual basis for the application of the two sub-sections of 924 in this case.

## CONCLUSION

For all of the reasons stated here, the Cruz-Ramirez defense respectfully submits

//
//
//
//

---

[2] The defense is aware that the Government's position in other, similar, cases has been that the regulation of use of weapons in murder cases has been deemed permitted by the Commerce Clause. The defense's position is that this view does not minimize the need for a jury finding that helps establish the Commerce Clause jurisdiction. Otherwise, murder is normally prosecuted by the states.

Cruz-Ramirez Motion for Judgment of Acquittal (FRCP 29); Memo In Support     10

that this Court should grant its Rule 29 motion.

Dated: July 8, 2011

                                      Respectfully submitted,

                                      SUSAN M. RAFFANTI
                                      JOHN T. PHILIPSBORN

                         by  /s/ John T. Philipsborn
                                      Attorneys for Defendant
                                      Jonathan Cruz-Ramirez

## PROOF OF SERVICE

I, Steven Gray, declare:

That I am over the age of 18, employed in the County of San Francisco, California, and not a party to the within action; my business address is 507 Polk Street, Suite 250, San Francisco, California 94102.

On today's date, I served the within document entitled

**CRUZ-RAMIREZ MOTION FOR JUDGMENT OF ACQUITTAL (FRCP 29); MEMORANDUM IN SUPPORT**

( ) By placing a true copy enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as set forth below;
(X) By electronically transmitting a true copy thereof;
( ) By having a messenger personally deliver a true copy thereof to the person and/or office of the person at the address set forth below.
( ) By delivering a true copy thereof to "Federal Express" to be delivered to the person
( ) By serving a true copy by facsimile to the person at the address set forth below

Wilson Leung, Assistant U.S. Attorney
Will Frentzen, Assistant U.S. Attorney
Theryn Gibbons, Assistant U.S. Attorney

Mark Rosenbush, Esq.
markrosenbush@mindspring.com

Martin Antonio Sabelli, Esq.
msabelli@comcast.net

Randy Sue Pollock, Esq.
pollockesq@aol.com

Peter Goodman, Esq.
petergoodman@earthlink.net

Jennifer Naegle, Esq.
jnaegle@yahoo.com

Ken Behzadi, Esq.
kenbehzadi@aol.com

Lupe Martinez, Esq.
martinez-luna@sbcglobal.net

I declare under penalty of perjury that the foregoing is true and correct.

Executed this July 8, 2011 at San Francisco, CA.

                /s/ Steven Gray
                Steven Gray