IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT JONATHAN CRUZ-RAMIREZ'S MOTION FOR NEW TRIAL** |
| JONATHAN CRUZ-RAMIREZ, *et al*., | |
| Defendants. | |

**INTRODUCTION**

After a jury convicted him of racketeering conspiracy, conspiracy to commit murder in aid of racketeering, conspiracy to commit assault with a dangerous weapon in aid of racketeering, the murder of Armando Estrada in aid of racketeering, and various firearms charges, defendant Jonathan Cruz-Ramirez moves for a new trial pursuant to FRCrP 33 (Dkt. No. 5157). For the following reasons, the motion is **DENIED**.

**STATEMENT**

Defendant Jonathan Cruz-Ramirez was charged with one count of racketeering conspiracy in violation of 18 U.S.C. 1962(d), one count of conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5), one count of conspiracy to commit assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. 1959(a)(6), two counts of murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(1), two counts of use of a firearm in furtherance of murder in aid of racketeering in violation of 18 U.S.C. 924(j)(1), and

three counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. 924(c). He was found guilty of seven of the ten counts (Counts 1–3, 13–16) but found not guilty of the murder of Juan Rodriguez in aid of racketeering (Count 10) and the associated firearms charges (Counts 11, 12) (Dkt. No. 5035).

On August 30, defendant Cruz-Ramirez's FRCrP 29 motion for a judgment of acquittal was denied (Dkt. Nos. 4673, 5032). Defendant Cruz-Ramirez subsequently filed the instant motion.

**ANALYSIS**

FRCrP 33(a) provides that a trial judge may vacate a judgment and grant a new trial if the interest of justice so requires. The decision to grant a new trial lies within the trial judge's discretion and is reviewed for abuse of discretion. *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984). The trial judge may weigh the evidence and evaluate for itself the credibility of the witnesses — the evidence need not be viewed in the light most favorable to the verdict. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). A motion for a new trial, however, should only be granted in "exceptional" circumstances in which the "evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred . . .". *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992) (citations omitted); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 821 (9th Cir. 1985).

Defendant Cruz-Ramirez raises a number of grounds that he asserts warrants a new trial. Each of these arguments is addressed in turn below.

### 1. CONSTRUCTIVE AMENDMENT OF THE INDICTMENT/VARIANCE

The motion first alleges that there was a constructive amendment of the indictment and/or a variance with respect to Counts One and Two. Variance occurs when "the facts presented at trial materially differ from those alleged in the indictment." *United States v. Doss*, 630 F.3d 1181, 1191 (9th Cir. 2011). Constructive amendment of the indictment occurs when the "complex of facts presented at trial" are "distinctly different from those set forth in the charging instrument" or when "the crime charged in the indictment was substantially altered at trial." *United States v. Bingham*, 653 F.3d 983, 993 (9th Cir. 2011) (internal quotation marks and

citation omitted). There was neither a variance nor a constructive amendment of the indictment with respect to Counts One or Two.

*First*, there was no variance or constructive amendment with respect to the charged enterprise in Count One. The third superseding indictment put defendant Cruz-Ramirez on clear notice that he was charged with being a member of the racketeering enterprise MS-13 — of which the 20th Street clique was a part — and the jury found the government proved up these charges. The indictment charged that the defendants conspired to conduct the affairs of a racketeering enterprise and identified that enterprise as MS-13. The indictment further specified that MS-13 was organized into "cliques" — smaller groups operating in specific cities or regions (Dkt. No. 658 at ¶ 8). Defendants, including defendant Cruz-Ramirez, were alleged to have been members of MS-13's 20th Street clique (*id*. at ¶ 19). At trial, the government proved up the existence of an MS-13 enterprise and proved that defendant Cruz-Ramirez was both a member of MS-13 and, in particular, its 20th Street clique. Defendant's membership in both the broader group (MS-13) and the subgroup (20th Street clique) are not mutually exclusive and it is not verboten for a RICO enterprise to be organized into cliques or franchises. As long as MS-13 was shown to have some framework for carrying out its objectives — whether formal or informal — and members who worked as a "continuing unit to achieve a common purpose" then it was not required to have a particular structure, or even the same structure over time, in order to constitute an enterprise. *See Bingham*, 653 F.3d at 993. The government achieved this. The government presented ample evidence that all MS-13 cliques had a shared common purpose and generally followed universal rules (*see, e.g.,* May 4 Tr. 5344–5356; June 9 Tr. 9419, 9529, 9531). Consistent with the indictment and the government's proof at trial, the jury instructions specified the charged enterprise was MS-13 and that defendants were alleged to be members of both MS-13 and its 20th Street clique.[1] Based upon these instructions, the jury found defendant Cruz-Ramirez guilty of Counts One and Two. There was no variance or constructive amendment of the indictment.

---

[1] Interestingly, counsel for defendant Cruz-Ramirez requested during the charging conference that the jury be instructed that the enterprise at issue was the 20th Street Clique only — not MS-13 (Aug. 1 Tr. 15818). This request, however, was denied.

3

*Second*, no variance or constructive indictment was caused by the jury instruction that:

> [A] conspiracy may begin as a plot to commit a less serious target crime and later be expanded, by agreement, to contemplate a more severe target crime. So long as the government proves all required elements of the conspiracy to commit the more severe crime, including that the defendant reached a knowing and intentional agreement with one or more persons other than government informants to commit the more severe crime, it does not matter that the conspiracy grew out of an earlier plot to commit less serious crimes.

(Dkt. No. 4989 at 13). Although a bill of particulars asserted that defendant Cruz-Ramirez joined the conspiracy charged in Count One in August 2005, nothing in the indictment nor any bills of particulars specified that the target crime charged in Count One — "to conduct, or to participate in the conduct of, the affairs of an enterprise through a pattern of racketeering activity" — could not have grown out of an earlier conspiracy to commit a less serious target crime. Similarly, nothing in the indictment or the bill of particulars specified that the target crime charged in Count Two — to commit murder to gain entrance to, or to maintain or increase position in the alleged enterprise — could not have grown out of an earlier conspiracy to commit a less serious target crime. The Court's instruction in no way modified the charges (Aug. 12 Tr. 17849, 17862). And contrary to the motion's assertion, the indictment did not charge that all defendants *necessarily* "agreed to murder" at the same moment they "joined" MS-13's 20th Street clique (Br. 13). As was oft-repeated by the Court during trial, proof of gang membership is not one and the same as proof of the conspiracies charged in Counts One and Two.

In any event, the evidence presented by the government at trial was that defendant Cruz-Ramirez had the requisite mental states for Count Two and the special findings for Count One (Special Verdict Form Question 1A) when he joined the conspiracies in August 2005 and the government did not present evidence that the purpose or agenda of the conspiracy changed over time.[2] The government presented ample evidence that all MS-13 members were expected to attack and kill rivals and that individuals were informed of this expectation prior to being "jumped in" (April 7 Tr. 1931–32; May 4 Tr. 5347; May 23 Tr. 7332–33, 7336–37; June 15 Tr.

---

[2] Notably, defendant Cruz-Ramirez did not turn 18 until January 5, 2007. This necessarily means that the government was required to show that defendant Cruz-Ramirez understood the nature and scope of the conspiracy and continued to agree to it well after August 2005 (*see, e.g.,* Dkt. No. 4989 at 31–32).

4

10475–77). The need for the objected-to instruction did not arise until defense counsel insinuated a theme that the conspiracy's purpose/agenda changed after the introduction of government informants and that this change negated defendant Cruz-Ramirez's culpability for the charged crimes. The instruction was accordingly given to clarify that even if the jury did not find that the conspiracies had started out contemplating murder, defendant Cruz-Ramirez could still be found guilty of Count Two and the special findings for Count One if the conspiracies or defendant Cruz-Ramirez's understandings of the conspiracies were later expanded to such an extent that all elements of both counts were satisfied. *See Bingham*, 653 F.3d at 993 (finding government did not constructively amend the indictment by telling the jury it could convict the defendant for RICO conspiracy based on post-1993 evidence alone even though the defendant was alleged to have joined the conspiracy prior to that date). The instruction did not cause a variance or constructive amendment of the indictment.

Finally, it bears noting that even if there was some form of variance or constructive amendment — which there was not — variance in proof with respect to the starting date of a conspiracy is not reversible error — so long as defendant Cruz-Ramirez was afforded adequate notice of the charges against him — because date/time is not a material element of the conspiracies charged. *See, e.g., United States v. Shea*, 493 F.3d 1110, 1118 (9th Cir. 2007); *United States v. Harrison-Philpot*, 978 F.2d 1520, 1526 (9th Cir. 1992). As the undersigned has previously found, the indictment and subsequent bills of particulars more than adequately apprised defendant Cruz-Ramirez of the charges against him and there is no danger of double jeopardy. No new trial is warranted.

### 2. RULE 404(b) EVIDENCE

The motion next alleges that prior bad act evidence was improperly admitted without court examination into whether it was admissible under Rule 404(b). With the exception of a 2005 gang fight (discussed below), the motion does not specify the *specific* bad acts defendant contends were improperly admitted without due consideration under Rule 404(b) — instead, the motion simply makes the general assertion that juvenile acts and "alleged gang activities" by

defendant and his coconspirators were improperly admitted.[3] In any event, the argument is rejected. In each instance where the defense raised a Rule 404(b) objection to specific evidence — whether via written or oral motion — the undersigned considered whether the evidence should be excluded under Rule 404(b) and whether it ran afoul of Rule 403 prior to admitting or excluding the evidence, often granting motions to exclude (*see, e.g.*, Dkt. Nos. 3644, 4369; April 19 Tr. 3551; May 6 Tr. 5551; Aug. 3 Tr. 16028). In those instances where counsel made vague, general challenges to evidence, such challenges were denied without prejudice to motions directed to specific incidents. For example, the undersigned denied without prejudice a pretrial motion *in limine* seeking to exclude all acts for which the government purportedly did not provide adequate Rule 404(b) notice, instead notifying the defense that more specific challenges — via oral motion or written motion — must be raised with respect to those acts the defense alleges to be improper, unnoticed Rule 404(b) evidence, so that the undersigned could make specific determinations as their admissibility (Feb. 14 Tr. 209–210; Dkt. No. 3644). Additionally, as the undersigned previously explained, the majority of items alleged by the defense to have constituted Rule 404(b) evidence did not even fall under the purview of that rule because the statements were in furtherance of the charged conspiracies and necessarily involved *charged* conduct or conduct inextricably intertwined with the charges, not *uncharged* conduct targeted by Rule 404(b) (Dkt. No. 4321). *See, e.g., United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004).

Some evidence was admitted at trial as predisposition evidence, as all but one defendant asserted an entrapment defense during opening statements. Such evidence was not Rule 404(b) evidence requiring notice, as Rule 405(b) provides that specific acts of misconduct may be admitted to prove predisposition where entrapment is raised as a defense. *United States v. Mendoza-Prado*, 314 F.3d 1099, 1103–04 (9th Cir. 2002); *United States v. Thomas*, 134 F.3d 975, 980 (9th Cir. 1998); *see also* Dkt. No. 4321. A later ruling found that no entrapment

---

[3] Although the motion alleges that the defense was unfamiliar with the fruits of searches which the government sought to introduce into evidence until the evidence was brought into the courtroom, an inquiry into the matter during trial revealed that the government had made the evidence available for defense inspection prior to trial and during trial (April 19 Tr. 3726–33; Dkt. No. 4364).

instruction would be given and the jury was accordingly instructed that defendants were not on trial for any conduct or offense not charged in the case and that they were to disregard any evidence regarding whether or not defendants were predisposed to criminal activity unrelated to and preceding their alleged joining of any of the charged conspiracies (Dkt. No. 4989 at 2, 33).[4] Where inadmissible evidence arises during trial and the trial judge issues curative instructions, it is assumed "that juries follow admonitions and curative instructions." *United States v. Nolan*, 700 F.2d 479, 485 (9th Cir. 1983) (internal citations omitted). *See also Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1118 (9th Cir. 2005) ("[W]e presume jurors follow the court's instructions absent extraordinary situations.") An instruction's force and delivery is weighed against the prejudice generated by the evidence — and prejudice is determined by comparing "the probative force of the inadmissible evidence with that of the admissible evidence that supports the verdict." *Nolan*, 700 F.2d at 485.

The undersigned has been unable to locate any instances where evidence was admitted for the sole purpose of showing defendant Cruz-Ramirez's predisposition.[5] In all instances, evidence admissible for predisposition was also admissible as evidence of the nature and scope of the conspiracy— accordingly, the admission of such evidence as predisposition evidence inured minimal prejudice in that it would have been admitted anyways. Although a motion for mistrial filed by defendant Cruz-Ramirez asserted evidence of a 2005 gang fight was admitted for the purpose of showing defendant Cruz-Ramirez's predisposition, the jury was never instructed that the evidence could be used to only evaluate predisposition and the government did not argue that it sought to introduce the evidence for that purpose (May 3 Tr. 5099). The

---

[4] A ruling on whether an entrapment instruction would be given could not have been made sooner. The defense repeatedly resisted efforts by both the government and the Court to discern the factual basis for an entrapment defense until late in the trial (*see, e.g*, Dkt. Nos. 4320, 4391, 4781; June 7 Tr. 9072–73 ).

[5] Although a motion for mistrial filed by defendant Cruz-Ramirez asserted evidence of a 2005 gang fight was admitted for the purpose of showing defendant Cruz-Ramirez's predisposition, the jury was never instructed that the evidence could be used to evaluate predisposition and the government did not argue that it sought to introduce the evidence for that purpose (May 3 Tr. 5099). The testimony was admitted as evidence of the scope and nature of the charged conspiracies and to shed light on what defendant Cruz-Ramirez knew and understood after he turned 18.

7

1 testimony was admitted as evidence of the scope and nature of the charged conspiracies and to

2 shed light on what defendant Cruz-Ramirez knew and understood after he turned 18.

In comparison to the vast amount of evidence that supported the jury's verdict, any prejudice from predisposition evidence was *de minimis*. Moreover, defendant Cruz-Ramirez was allowed to introduce evidence regarding lack of predisposition that would not have otherwise been permitted; specifically, defendant Cruz-Ramirez was permitted to present testimony by his former school teacher Lieu Nguyen, his mother Juana Maide Ramirez Villanueva, and former case manager Roberto Aparicio, despite government motions aimed at excluding the witnesses (Dkt. Nos. 4766, 4768).

### 3.  IVAN MIRANDA HOMICIDE

The motion next argues that evidence regarding the Ivan Miranda homicide was improperly admitted because defendant Cruz-Ramirez was already in custody at the time of the incident. This argument is rejected. Evidence at trial made clear that the incident was the result of an MS-13 "hunt" for Norteños and that codefendant Moris Flores was alleged to have ordered the homicide as retaliation against the Norteños for the shooting of the father of an MS-13 member.[6] The evidence was accordingly relevant to Counts One, Two, and Three. Criminal activities perpetrated by racketeering confederates are admissible against each defendant to prove the existence and nature of the RICO enterprise and a pattern of racketeering activity, even if the defendant was not directly involved in that same incident. *See United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010); *United States v. Jones*, 566 F.3d 353, 362 (3d Cir. 2009), *United States v. Salerno*, 108 F.3d 730, 737 (7th Cir. 1997); *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991).[7] After considering the government's proffer and arguments by counsel, the undersigned determined that evidence of the homicide satisfied Rule 403 muster and was admissible. The undersigned, however, limited potentially inflammatory materials related to the homicide, such as certain autopsy and crime scene photographs.

---

[6] Defendant Cruz-Ramirez's codefendants Cesar Alvarado and Walter Chinchilla-Linar were directly charged with the homicide under 18 U.S.C. 1959 but pled guilty to the homicide prior to trial.

[7] Although defendant Cruz-Ramirez suggests that a Rule 404(b) calculus should have been made, no Rule 404(b) objection was made at the time (Dkt. No. 4038).

8

As stated during trial, the fact that defendant Cruz-Ramirez was incarcerated at the time the Ivan Miranda homicide occurred does not mean that evidence of the homicide was not relevant to defendant Cruz-Ramirez (Apr. 21 Tr. 4034). A defendant's participation in a conspiracy is deemed to continue until the defendant affirmatively demonstrates abandonment, disavowal, or withdrawal from the conspiracy. *See United States v. Jiminez Recio*, 537 U.S. 270, 274–77 (2003). No evidence was presented that defendant Cruz-Ramirez had withdrawn or abandoned the conspiracy after his incarceration and indeed the government submitted evidence that the conspirators continued their activities even while in jail or prison. Likewise, the statements and actions of an unarrested coconspirator who is still operating in furtherance of the conspiracy is admissible against an arrested conspirator to prove existence of the conspiracy. *United States v. Wentz*, 456 F.2d 634, 637 (9th Cir. 1972). Nonetheless, to ensure no juror confusion, the undersigned instructed the jurors at the time evidence was admitted of the limited purpose of the evidence and the fact that most of the defendants on trial were in custody at the time of the incident (Apr. 19 Tr. 3706). The undersigned similarly instructed the jury at the end of the case that the fact that a defendant was incarcerated necessarily meant he could not have been present at the scene of the crime (Dkt. No. 4989 at 32). The evidence admitted regarding the Ivan Miranda homicide does not warrant a new trial.

### 4. REBUTTAL TESTIMONY OF AGENT NIKKI SKOVRAN

The motion next argues that the testimony of Agent Nikki Skovran was not proper rebuttal testimony. This argument is also rejected. District courts have wide discretion in determining what evidence may be presented in rebuttal. *United States v. Koon*, 34 F.3d 1416, 1428–29 (9th Cir. 1994); *United States v. Armstrong*, 654 F.2d 1328 (9th Cir. 1981). After an evidentiary hearing during which the government was required to present Agent Skovran's proposed testimony, the undersigned sharply limited those matters that Agent Skovran would be permitted to testify to, in order to ensure that Agent Skovran would only present testimony that was proper rebuttal to the defense cases (Dkt. No. 4935).[8] Although the government sought to

---

[8] The defense was warned on a number of occasions that the door may be opened during the defense case to cell-site expert testimony in the government's rebuttal case (June 29 Tr. 1179, June 30 Tr. 11987).

9

introduce cell site evidence specific to defendant Cruz-Ramirez, the undersigned disallowed such testimony and limited Agent Skovran to testimony regarding the cell phone registered to Erick Lopez (for the Ng/Joldic homicide) and the cell phone registered to Guillermo Herrera (for the Armando Estrada homicide) (Dkt. No. 4395). In compliance with this order, Agent Skovran's rebuttal testimony did not mention a "Cruz-Ramirez" phone, a phone owned by defendant Cruz-Ramirez's former girlfriend, or phone number (415) 368-3233 (the number associated with defendant Cruz-Ramirez's former girlfriend) (Aug. 5 Tr. 16633-16618). Instead, Agent Skovran's testimony focused on the Lopez and Herrera phones, which the undersigned had explained constituted proper rebuttal based to the defense cases presented (Dkt. No. 4395).

To allow the defense to meet Agent Skovran's testimony, all defendants were invited to present sur-rebuttal (Dkt. No. 4935). No defendant, however, took the opportunity to present sur-rebuttal although at least two defendants had retained cell-site experts.

### 5. SUFFICIENCY OF EVIDENCE OF ARMANDO ESTRADA HOMICIDE

Defendant Cruz-Ramirez alleges that there was insufficient evidence for the jury to convict him of the murder of Armando Estrada. In effect, this a repeat of defendant Cruz-Ramirez's Rule 29 motion, which was rejected by the undersigned (Dkt. No. 5032). Defendant Cruz-Ramirez has presented no basis for reconsidering the undersigned's earlier finding that there was ample evidence from which a reasonable jury could find him guilty beyond a reasonable doubt for the murder. The fact that the undersigned did not give a separate aiding and abetting instruction for each of the numerous charged non-conspiracy offenses (nineteen total) and instead used a universal aiding and abetting instruction does not negate jury's finding that defendant Cruz-Ramirez was guilty of Count 13 as charged.[9]

---

[9] No objection to the aiding and abetting instruction was raised at the charging conference despite the Court's admonition that those issues not raised would be deemed waived, even if the matter had been raised earlier (Dkt. No. 4795 at 2; July 25 Tr. 14876–79). Although defendant Cruz-Ramirez later raised a written objection to the "catch all" aiding and abetting instruction on August 4 (Dkt. No. 4937), the Court had specified it would only consider comments to the additional changes circulated by the Court, rather than challenges to instructions that had already been covered at the charging conference (Aug. 3 Tr. 16258).

10

### 6. CHALLENGE TO SECTION 924(j) CONVICTION

Defendant Cruz-Ramirez next asserts that the Count 14 conviction should be vacated because the indictment predicated the Section 924(j) violation on VICAR murder and not murder as defined by 18 U.S.C. 1111.[10] This argument was rejected long ago and there is no basis for reconsideration of that order (*see* Dkt. No. 1820). As previously stated, Section 924(j) does not require that murder as defined in Section 1111 be the predicate crime for a Section 924(j) conviction. So long as the possession of a firearm causes the death of a person in a way that meets the definition of murder under Section 1111, the requirements of Section 924(j) are satisfied. The definition of murder as provided to the jury, although also the definition of murder under state law, meets the definition of murder under Section 1111 — the unlawful killing of a person with malice aforethought (Dkt. No. 4989 at 14).

Likewise, the conviction will not be vacated because a general aiding and abetting instruction was given rather than an instruction specifically repeated in conjunction with the instruction on Count 14. As described above, the aiding and abetting instruction was properly given and there was no need to repeat the aiding and abetting instruction in conjunction with each of the nineteen separate non-conspiracy counts. And although defendant Cruz-Ramirez suggests that the government's theory of the case (that defendant Cruz-Ramirez was the driver and defendant Guillermo Herrera was the shooter) necessarily means he could not be found guilty of Count 14, this is incorrect. *See, e.g., United States v. Thompson*, 610 F.3d 1335, 1338–39 (11th Cir. 2010); *United States v. Easter*, 66 F.3d 1018, 1024 (9th Cir. 1995).

In any case, the parties agree that defendant Cruz-Ramirez's convictions for violating Section 924(j) and 924(c) should be merged for sentencing purposes. Counts 14 and 15 will accordingly be merged for sentencing purposes.

### 7. CUMULATIVE ERROR

Defendant Cruz-Ramirez argues that a number of errors by the undersigned combined together created a cumulative error so substantial that he is entitled to a new trial. This

---

[10] This objection was not raised during the charging conference although the parties were given multiple drafts of proposed instructions for comment and were warned that objections must be brought to the undersigned's attention at the conference and (Dkt. Nos. 4795, 4926, 4954).

argument is rejected. As this order explains, the "errors" alleged by defendant Cruz-Ramirez do not constitute "errors" — nor do they combine to such a degree that warrants a new trial.

**CONCLUSION**

The Court went to considerable lengths to ensure that all seven accused on trial received a fair trial. A considerable number of rulings went for the defense, such as the exclusion of gang-expert testimony and refusal to give the *Pinkerton* instruction. Large CJA sums were consumed by the defense, which was most vigorous. The jury was attentive and discriminating, rejecting the government's case on some counts and accepting it on others. One accused was completely acquitted. There is no occasion for a new trial.

**IT IS SO ORDERED.**

Dated: November 17, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE