1    MELINDA HAAG (CABN 132612)
     United States Attorney
2
     MIRANDA KANE (CABN 150630)
3    Chief, Criminal Division

4    W.S. WILSON LEUNG (CABN 190939)
     WIL FRENTZEN (LABN 24421)
5    Assistant United States Attorneys

6    THERYN G. GIBBONS (NYBN 4612867)
     Trial Attorney, Organized Crime and Gang Section
7
        450 Golden Gate Avenue, Box 36055
8       San Francisco, California 94102
        Telephone: (415) 436-6758
9       Facsimile: (415) 436-6753
        E-Mail: wilson.leung@usdoj.gov
10
     Attorneys for the United States of America
11

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15   UNITED STATES OF AMERICA,          )    No. S3-CR-08-730-WHA
                                        )
16                                      )
          v.                            )    GOVERNMENT'S SENTENCING
17                                      )    MEMORANDUM FOR JONATHAN
                                        )    CRUZ-RAMIREZ (DOCKET #5397)
18   JONATHAN CRUZ-RAMIREZ,             )
                                        )
19        Defendant.                    )
                                        )
20   _____ )

21   **I.    Introduction**

22          The Government respectfully submits this Sentencing Memorandum to advise the Court

23   of its position regarding the appropriate sentence for Jonathan Cruz-Ramirez, as well as to

24   respond to Cruz-Ramirez's sentencing memorandum of November 21, 2011 (Docket #5397).

25   Like the sentencing claims of his co-defendants, and like his arguments presented in his

26   November 6, 2011 motion for a downward departure (Docket #5317), Cruz-Ramirez's present

27   claims are unsupported by either law or fact.  In light of all the factors set forth under 18 U.S.C.

28

3553(a), the Court should impose the statutory maximum sentence for each of the seven[1] counts of conviction, to run consecutively.

**II.     Discussion**

      *A.     Applicable Sentencing Law*

      Under the current sentencing regime, the Court must sentence in accordance with the directions of 18 U.S.C. § 3553(a).  Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth specific considerations, including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the defendant's need for rehabilitation; the kinds of sentences available; and the sentencing range under the Guidelines. 18 U.S.C. § 3553(a).  On appellate review, a sentence is reviewed for "unreasonableness" in light of these various factors.  United States v. Booker, 543 U.S. 220, 260-62 (2005).

      Although the Supreme Court's decision in Booker has rendered the Sentencing Guidelines advisory, the Guidelines still remain the "starting point and initial bench-mark" for sentencing.  Kimbrough v. United States, 128 S. Ct. 558, 574 (2007) (internal quotation marks and citation omitted); see United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*); United States v. Ellis, 641 F.3d 411, 415 (9th Cir. 2011).  While there is no presumption of reasonableness for a Guidelines range sentence, see Carty, 520 F.3d at 991-992, if a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. (citing Gall v. United States, 128 S. Ct. 586, 597 (2007)); see United States v. Munoz-Camarena, 631 F.3d 1028, 1030 (9th Cir. 2011) ("A district court must start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the

---

      [1] Because Count Fifteen is a lesser included offense of Count Fourteen, Count Fifteen has no independent sentencing effect.

1 extent of the departure from the Guidelines sentence.").

2       A downward departure in a defendant's applicable Guidelines range can only be granted

3 under very limited circumstances. <u>See</u> U.S.S.G. § 5K2.0(a)(2)(B) ("A departure may be

4 warranted in the *exceptional case* in which there is present a circumstance that the Commission

5 has not identified in the guidelines but that nevertheless is relevant to determining the appropriate

6 sentence.") (emphasis added). Thus, in order to justify a downward departure based on a factor

7 that is not specifically addressed in the Guidelines as a basis for a departure, "certain aspects of

8 the case must be found unusual enough for it to fall outside the heartland of cases in the

9 Guideline." <u>Koon</u> v. <u>United States</u>, 518 U.S. 81, 98 (1996); <u>see id.</u> at 96 (the sentencing court

10 must decide, "after considering the structure and theory of both relevant individual guidelines

11 and the Guidelines as a whole, decide whether it is sufficient to take the case out of the

12 Guidelines's heartland. . . .The court must bear in mind the Commission's expectation that

13 departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'")

14 (additional internal quotation marks and citations omitted).

15       So long as a sentencing court is aware of its authority to downwardly depart, a decision

16 not to do so is not reviewable on appeal. <u>See</u> <u>United States</u> v. <u>Allen</u>, 425 F.3d 1231, 1236 (9th

17 Cir. 2005) (post-<u>Booker</u> holding that "[b]ecause the district court appeared to be aware of its

18 authority to depart downward, denial of [the defendant's] request is not reviewable"); <u>United</u>

19 <u>States</u> v. <u>Linn</u>, 362 F.3d 1261, 1262 (9th Cir. 2004) (per curiam) ("It is settled law that 18 U.S.C.

20 § 3742 strips us of jurisdiction to review a discretionary denial of a downward departure.")

21 (citing cases).

22       "As a general rule, the preponderance of the evidence standard is the appropriate standard

23 for factual findings used for sentencing." <u>United States</u> v. <u>Armstead</u>, 552 F.3d 769, 777-78 (9th

24 Cir. 2008); <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Treadwell</u>, 593 F.3d 990, 1001 (2010). In addition, the

25 sentencing court can consider all relevant information, including acquitted conduct, when

26 determining a defendant's sentence, so long as the sentence imposed does not exceed the

27 applicable statutory maximum and the court finds the conduct proven by a preponderance

28 standard. <u>See</u>, <u>e.g.</u>,<u>United States</u> v. <u>Scott</u>, 642 F.3d 791, 800-01 (9th Cir. 2011) (holding that use

of acquitted conduct at sentencing does not violate the Constitution); United States v. Mercado,

474 F.3d 654, 656-57 (9th Cir. 2007) (reaffirming post-Booker validity of United States v. Watts,

519 U.S. 148 (1997) (per curiam), which held that acquitted conduct may be used for sentencing,

"'so long as that conduct has been proved by a preponderance of the evidence'") (quoting Watts,

519 U.S. at 157); United States v. Massino, 546 F.3d 123, 135-36 (2d Cir. 2008) (holding that

"[w]hen the offense of conviction is a RICO conspiracy, relevant conduct may include

underlying predicate acts, even if not proven at trial beyond a reasonable doubt, as long as the

sentencing court finds that they were proven by the lower preponderance of the evidence

standard") (internal quotation marks and citations omitted); United States v. Yannotti, 541 F.3d

112, 129-30 (2d Cir. 2008) (holding that "all information adduced during trial, including

acquitted conduct," can be considered at sentencing; "[w]hile a fact-finder is required to find

guilt beyond a reasonable doubt, the sentencing court may find facts relevant to sentencing by the

lower preponderance of the evidence standard").  Furthermore, a defendant convicted of a

racketeering violation can be sentenced for "any act, whether or not charged against defendant

personally, that qualifies as a RICO predicate under 18 U.S.C. § 1961(1) and is otherwise

relevant under [U.S.S.G.] § 1B1.3."  United States v. Carrozza, 4 F.3d 70, 77 (1st Cir. 1993)

(footnote omitted); see U.S.S.G. § 1B1.3(a)(1)(B) (defining relevant conduct for sentencing "in

the case of jointly undertaken criminal activity" as "all reasonably foreseeable acts and omissions

of other in furtherance of the jointly undertaken criminal activity"); see, e.g., United States v.

Morales, 655 F.3d 608, 636 (7th Cir. 2011) (affirming district court sentence that was based on

acts of co-conspirators because "'each and every overt act of violence in connection with the

RICO conspiracy, although perhaps not specifically agreed to by each and every defendant on

every specific occasion, was nonetheless reasonably foreseeable to each and every defendant

given the nature of their joint RICO enterprise.'") (quoting PSR adopted by the sentencing

court); United States v. Darden, 70 F.3d 1507, 1544-45 (8th Cir. 1995) (holding that murder with

which only others were charged but proven to have been aided and abetted by defendant was

properly considered relevant conduct for the defendant's sentencing); Carrozza, 4 F.3d at 74-78

(holding that the defendant could be sentenced for murders not charged against him in the

1  indictment or not charged at all in the indictment, so long as they were reasonably foreseeable to

2  the defendant and were in furtherance of jointly undertaken criminal activity); see also Salinas v.

3  United States, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which,

4  if completed, would satisfy all of the elements of a substantive criminal offense, *but it suffices*

5  *that he adopt the goal of furthering or facilitating the criminal endeavor.*  He may do so in any

6  number of ways short of agreeing to undertake all of the acts necessary for the crime's

7  completion.  *One can be a conspirator by agreeing to facilitate only some of the acts leading to*

8  *the substantive offense.*  It is elementary that a conspiracy may exist and be punished whether or

9  not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, an

10  so punishable in itself.  [¶]  It makes no difference that the substantive offense under § 1962(c)

11  requires two or more predicate acts.  The interplay between subsections (c) and (d) does not

12  permit us to excuse from the reach of the conspiracy provision an actor who does not himself

13  commit or agree to commit the two or more predicate acts requisite to the underlying offense.")

14  (emphases added).  Indeed, "in a RICO case, in determining the base offense level, the

15  sentencing court should not limit its relevant conduct inquiry to the predicate acts charged against

16  the defendant, but instead should consider all conduct reasonably foreseeable to the particular

17  defendant in furtherance of the RICO enterprise to which he belongs." United States v. Marino,

18  277 F.3d 11, 37 (1st Cir. 2002) (internal quotation marks and citations omitted).

19          B.      *The Defendant's Sentencing Claims Have No Merit*

20          Given these legal principles, Cruz-Ramirez's sentencing claims have no merit.  Because

21  his present claims largely repeat the arguments presented in his earlier downward departure

22  motion (Docket #5317), the Government would respectfully rely on its November 15, 2011

23  response to that motion (Docket #5347).  The Government would, however, like to respond to

24  some of the more frivolous claims presented by Cruz-Ramirez.

25          i.      *The Probation Office Properly Attributed Four Additional Murders to Cruz-*
26                  *Ramirez*

27          Cruz-Ramirez contends that the Probation Office erred by attributing to him not only the

28  murder of Armando Estrada, for which he was convicted by the jury, but also the murders of

Ernad Joldic, Philip Ng, Juan Rodriguez, and Ivan Miranda.  Cruz-Ramirez's claim is baseless.
The evidence in the record clearly establishes by at least a preponderance of the evidence that all
these murders were committed in furtherance of MS-13, and that — given his own murderous
intent — were reasonably foreseeable to him.

Moreover, although the jury acquitted Cruz-Ramirez for the Juan Rodriguez, this murder
may still be attributed to Cruz-Ramirez because the evidence in the record establishes by at least
a preponderance that he killed Juan Rodriguez.  For instance:

(1) Firearms examination confirmed that the .380-caliber handgun used in the May 31,
2008 murder of Rodriguez was also fired in the April 22, 2008 non-fatal shooting of Ivan
Olmedo, Carlos Villegas, and Sergio Hernandez, which, according to cooperator Jose
Espinal, Cruz-Ramirez and other MS-13 members carried out, see Tr. at 8524-43
(testimony of firearms examination expert John Sanchez); Tr. at 10532-40 (testimony of
Jose Espinal);

(2) Jose Espinal testified that a few days before he learned of Rodriguez's death, MS-13
leader Moris Flores complained that the *miqueros* — i.e., *nieros* — were "out of line" and
that "Patas" — i.e., Rodriguez — was organizing them;

(3) Espinal also testified that Cruz-Ramirez taunted the *nieros* when they mourned
Rodriguez's death, stating, "Poor thing.  They killed Patas," and "The *jale*'s already
done," Tr. at 10566;

(4) Cooperator Walter Palma testified that MS-13 member Edwin Ramos ("Popeye")
stated that Cruz-Ramirez claimed he (Cruz-Ramirez) killed Patas over "rent" and that
"Pasadena" — i.e., members of MS-13['s] PLS clique — were involved, Tr. at 7456;

(5) Palma also testified that Cruz-Ramirez claimed he (Cruz-Ramirez) emptied a whole
clip into "Patas," see Tr. at 7461;

(6) Cooperator Abraham Martinez testified that Cruz-Ramirez bragged twice about
killing "Patas," explaining to Martinez that it was good for the gang and that he (Cruz-
Ramirez) was doing his "duty," and that the last words of "Patas" were "*chale carnal*," Tr
at 2406-11; and

(7) Cooperator Jose Alvarado testified that Cruz-Ramirez likewise bragged about killing
"Patas" and claimed that the last words of "Patas" were "*chale niero*," Tr at 8811-16.

In light of the evidence in the record, the murders of Ernad Joldic, Philip Ng, Juan
Rodriguez, and Ivan Miranda were absolutely reasonably foreseeable to Cruz-Ramirez and were
committed in furtherance of the MS-13 enterprise.  Accordingly, the Probation Office properly
attributed the murders to Cruz-Ramirez.

ii.      *Cruz-Ramirez's Double-Counting Claim for Count Sixteen is Legally Wrong*

Cruz-Ramirez contends that the recommendation of a consecutive life sentence for the §

924(c) charge in Count Sixteen constitutes impermissible "double-counting" and would violate Apprendi v. New Jersey, 530 U.S. 466 (2001), and Blakely v. Washington, 543 U.S. 220 (2005). This claim is incorrect.

First, Count Sixteen charges a violation of § 924(c) based on Cruz-Ramirez's possession of a Makarov handgun on July 25, 2008 in furtherance of the racketeering-related conspiracies charged in Counts One, Two, and Three. In contrast, Count Fifteen charges him with possessing a firearm (or aiding and abetting another's possession of a firearm) in furtherance of the July 11, 2008 shotgun murder of Armando Estrada charged in Count Thirteen. There is no impermissible double counting. The conduct being punished by Count Sixteen is entirely different from the conduct being punished by Count Fifteen: the two crimes occurred on different dates, involved different weapons, different underlying predicate crimes of violence, and different victims.

Moreover, Cruz-Ramirez utterly confuses the law by trying to invoke Apprendi and Blakely. The jury convicted Cruz-Ramirez on Count Sixteen, and the statutory maximum sentence is life, which, by statute, must be imposed consecutive to any other term of imprisonment. See 18 U.S.C. § 924(c). Because the sentence recommended by the Probation Office for Count Sixteen — life — does not exceed the statutory maximum, Apprendi and its line of cases is not implicated. See United States v. Saya, 247 F.3d 929, 942 (9th Cir. 2001) ("We have held repeatedly that a defendant cannot obtain relief under Apprendi when his sentence does not exceed the statutory maximum authorized by the jury's verdict. . . ."); see, e.g., United States v. Alvarez, 358 F.3d 1194, 1212 ( 9 th Cir. 2004) (rejecting Apprendi challenge because sentence imposed did not exceed statutory maximum sentence); United States v. Romero, 282 F.3d 683, 690 (9th Cir. 2002) (same).

        *iii.*     *Cruz-Ramirez's Claim of Sentencing Entrapment is Delusional*

For the reasons set forth in the Government's response to Cruz-Ramirez's downward departure motion (Docket # 5347), his claim that the Government, through its informants, somehow "entrapped" him is so factually baseless that it can only be described as delusional.

//

iv.   *Cruz-Ramirez Fails to Establish His Entitlement to a Minor Role Adjustment*

Cruz-Ramirez contends that he is entitled to a minor role adjustment.  There is no factual basis for such an adjustment and it should be denied.

v.   *Cruz-Ramirez's Demand for a Sentence Below the Mandatory Minimum Sentences is Utterly Lawless*

Cruz-Ramirez asks this Court to sentence him below the applicable mandatory minimum sentence of life.  This demand is utterly lawless and must be denied.

vi.   *Cruz-Ramirez's Family History and Malingering Are Not Mitigating Circumstances*

Cruz-Ramirez contends that his family history and his putative borderline intelligence are mitigating circumstances.  This claim is meritless.  As the evidence presented at trial demonstrates, Cruz-Ramirez was a brutal, ruthless killer who cared about nothing except himself.  He played a leadership role in MS-13, for instance, by explaining to Jose Espinal the need to kill in order to gain respect.  He also obstructed justice by soliciting retaliation (through Jason Signs) against cooperating witnesses and threatening a witness (Carlos Garrido) during trial.  He also attacked and fractured the nose of an Alameda County Sheriff's deputy while incarcerated for this very case.  There is nothing in the record to support any mitigation claim by the defendant.  The overwhelming proof presented during the five-month trial establishes the need for the imposition of the most severe sentence possible.

**III.   Conclusion**

By any calculation, Cruz-Ramirez's applicable Guidelines offense level is 43 and his sentencing range is life.  Given the facts in the record and the various sentencing factors under 18 U.S.C. § 3553(a), the Court should impose the statutory maximum sentence for each count of conviction — to wit, life for Count One (racketeering conspiracy), ten years for Count Two (conspiracy to commit murder in aid of racketeering), three years for Count Three (conspiracy to commit assault with a dangerous weapon in aid of racketeering), and life each for Count Thirteen (racketeering murder of Armando Estrada), Count Fourteen (use of a firearm causing the murder of Armando Estrada), and Count Sixteen (July 25, 2008 possession of a firearm in furtherance of

the racketeering-related conspiracies charged in Counts One, Two, and Three).[2]  Cruz-Ramirez

relished his participation in a murderous criminal enterprise[3] and has no hope for rehabilitation.

He has shown no remorse nor acceptance of responsibility and continues to insist that he was a

victim, a victim of his upbringing as well as a victim of Government "entrapment," despite the

insurmountable evidence of his guilt.  Given all these circumstances, Cruz-Ramirez should spend

four lifetimes and thirteen years in prison.


DATED: November 30, 2011                    Respectfully submitted,

                                            MELINDA HAAG
                                            United States Attorney

                                      By:   ___/s/_____
                                            W.S. Wilson Leung
                                            Wil Frentzen
                                            Assistant United States Attorneys

                                            Theryn G. Gibbons
                                            Trial Attorney

---

[2] As noted earlier, because Count Fifteen is a lesser included offense of Count Fourteen, Count Fifteen does not trigger any sentence independent of Count Fourteen, although the fact of the conviction for Count Fifteen remains, as do any consequences for the fact of this conviction.

[3] The Government believes that the evidence presented during Cruz-Ramirez's trial and the more recent trial of Danilo Velasquez and Luis Herrera establishes that MS-13 members were responsible for well more than the five murders discussed herein.  For the purpose of Cruz-Ramirez's sentencing, however, consideration of the murders of Ernad Joldic, Philip Ng, Juan Rodriguez, Armando Estrada, and Ivan Miranda is sufficient for the sentence requested by the Government.